JUNE 1822. COURT OF APPEALS, JUNE TERM, 1822.

## LAW vs. SCOTT.

Law
vs
Scott

*In an action of slander for words spoken, by which the nomination of the plaintiff to an office of profit was rejected by the senate of the United States, the defendant's pleas of guilty as to part, and a special justification as to the residue, and that the words were spoken out of the limits and jurisdiction of the state—Held to be bad on demurrer.*

*The service of copies of the interrogatories which accompany a commission on the adverse party that a sufficient time before the issuing of the commission the motion to enable him to file cross interrogatories, is sufficient notice of the issuing of the commission, and of the time and place of its execution.*

*The testimony of a senator of the U. S. that 'the plaintiff's nomination had been rejected by the senate, is admissible evidence, where the plaintiff had applied to the senate for the removal of the injunction of secrecy in relation to such rejection, and fixed in the application.*

*These words of a deposition, "but the charges above mentioned, from their character, could not have failed to have produced its rejection, even if there existed no other reason for it; and they doubtless, I presume, had a very considerable effect in producing it," being the opinion only of the witness, are not competent evidence. It is competent, however, for the witness to say, that such charges caused him to vote against the nomination.*

*Evidence of the misconduct of the plaintiff, in parti-*

APPEAL from *Charles* county court. This was an action of slander, brought by the now appellee against the appellant. The declaration, after the usual introductory words in actions of slander of the plaintiff's being a good, true, honest and faithful citizen, &c. stated, "and whereas the plaintiff had been nominated by the president of the *United States*, to the senate thereof, for the office of commissioner of claims, &c. Yet the defendant well knowing the premises, but contriving, and wickedly and maliciously intending to injure the plaintiff in his aforesaid good name, fame and credit, and wholly to destroy

*Martin*, for the appellants, resisted the motion, and contended that this court had no power over the records of the late general court and court of appeals, so as to make amendments or grant the motion. He doubted whether either of those courts, if in existence, could allow the amendment to be made after 16 years. He cited *Hunter vs. Fairfax*, 1 *Munf.* 218, 237. 7 *Cranch*, 631, S. C.

*Taney*, in reply, referred the court to the application made to this court at June term 1816, by *William Holmes*, to have the record of an old deed in 1737 corrected so as to make it conformable with the original, there being a mistake in one of the courses, where the court ordered the correction to be made.

CHASE, Ch. J. delivered the opinion of the court, *(a).* The words of the clause in the act of 1805, ch. 65, s. 18, are full and comprehensive, directing the records of the general court for the western shore, (meaning the records of proceedings of that court,) to be deposited with the clerk of the court of appeals for the western shore, and kept, in the same manner, as the records of the court of appeals for the western shore, are kept. By the act of 1806, ch 41, s 4, all executions which have issued, or shall issue on *judgments* of the general court, shall have the same effect, and may be proceeded on in the same manner, as executions on judgments of the court of appeals. This is a plain recognition of the judgments of the general court, being records of the court of appeals, and gives validity and legal operation to the acts of the clerk of the court of appeals who issued executions. If the records of the general court are considered as the records of the court of appeals, to enable the clerk of that court to issue executions thereon, *a fortiori*, they must be considered as the records of the court of appeals, to enable the court of appeals to do an act necessary for the attainment of justice, in a case too in which no *laches* or negligence can be imputed to the plaintiff, and the delay has been occasioned by the defendants. aided by the intervention of the court of chancery in exercise of its equitable jurisdiction. If the court have the power to grant the enlargement of the term, it ought to be exercised, because justice requires it.

The court order the term to be enlarged, by striking out the word *ten*, wherever it occurs in the declaration, in ejectment, and inserting in lieu thereof the word *thirty*.

MOTION GRANTED.

*(a.) Buchanan, Martin* and *Dorsey*, J. present.

the same, to prevent the confirmation of his said appointment and nomination by the said senate, and to bring him into public hatred, scandal; ignominy and disgrace, and to subject him to the pains and penalties by the laws and statutes of this state, and the *United States of America*, made and provided against those who commit the offences and misconduct hereinafter mentioned to have been charged upon and imputed to the plaintiff, and to vex, harrass, oppress, impoverish, and wholly ruin him, the plaintiff, heretofore, to wit; on, &c. at the city of *Washington*, in the district of *Columbia*, to wit; at the county aforesaid, in a certain discourse which the defendant then and there had with a certain *William T. Barry*, a senator of the *United States'* congress, and divers other senators of the said congress, of and concerning the plaintiff's nomination by the President of the *U. S.* to the senate thereof, for the office of commissioner of claims, &c. and his the plaintiff's having sold out of the district of *Columbia*, and this state, certain of his the plaintiff's negro slaves, into some foreign parts to the southward, he the defendant then and there falsely and maliciously said, rehearsed, proclaimed, and loudly published these false, scandalous, malicious, and defamatory words following, of the plaintiff, in the presence and hearing of the aforesaid persons; that is to say, he (meaning the plaintiff,) had forcibly and fraudulently transported from the district of *Columbia*, and the state of *Maryland*, and sold to the south, negroes entitled to their freedom, he (meaning the plaintiff,) well knowing that the negroes were entitled to their freedom, and had suits depending in the court of *Washington* aforesaid, for establishing their freedom; (meaning that he the plaintiff having in possession certain negroes who he well knew were entitled to their freedom, and were endeavouring by suits at law to recover their freedom, had forcibly and fraudulently carried them out of the jurisdiction of the district of *Columbia* and the state of *Maryland*, and sold them to foreign purchasers of negroes from the southern states;) and that he, (meaning the plaintiff,) was in such habits of intemperance, (meaning drunkenness,) as to be unfit to discharge the duties of any office. And afterwards, to wit, on the day and year aforesaid, at the county aforesaid, by means of the speaking and publishing of which said several false, scandalous, malicious, and

June 1822.

Law
vs
Scott

cular instances, going to prove his unfitness for, the office to which he was nominated, is inadmissible.

If the defendant at the request of a senator of the *U. S.* to give him information as to the fitness of the plaintiff for the office to which he was nominated, spoke the words charged in the declaration, and referred to the records of a court for their confirmation, the action cannot be sustained.

Falsehood and malice are the *gist* of the action for defamation, and where they are not implied from the words themselves, they must be proved.

Words spoken to a senator of the *U. S* not voluntarily, but at the request of the senator, as to the plaintiff's fitness for an office to which he is nominated, do not imply malice.

Where one of the jury gets sick in the course of the trial, and the verdict is rendered by consent of the parties by the remaining eleven jurors, can advantage be taken of it, on an appeal? *Quere.*

Whether the plea of *non cul* as to part, and justification as to the rest of the plaintiff's declaration, is one or two pleas? *Quere.*

defamatory words, before the said persons, the plaintiff is greatly hurt, injured and prejudiced, in his aforesaid good name, fame and reputation, and is fallen into great hatred and contempt among the said senators, and other good and worthy persons, who, not knowing the falsehood of the said words, but believing them to be true, have withdrawn all their confidence from him; and refused to have any intercourse with him; and also by reason thereof the aforesaid senators of the *United States'* congress, who before and at the time of the committing of the said grievances, were about to concur, and would otherwise have concurred with the president of the *U. S.* in appointing the plaintiff to the honourable and important office of commissioner of claims, to which a highly valuable salary was attached, to wit, the sum of two thousand dollars, to be paid annually; afterwards, to wit, on the day and year aforesaid, at the city of *Washington* aforesaid, wholly and entirely refused to concur with the president aforesaid, in appointing the plaintiff to the office aforesaid, and the plaintiff hath from thence hitherto remained, and continued by means thereof; wholly unemployed in the said office, or any other depending on the will of the said senate; and the plaintiff hath been, and is, by means of the premises, otherwise greatly injured, to wit, at the county aforesaid, to the damage of the plaintiff of twenty thousand dollars current money; and therefore he brings his suit," &c. The defendant in the court below pleaded, 1. *Not Guilty*, 2. "And for a further plea in this behalf, as to the saying and publishing of the said several words of the plaintiff, as in the plaintiff's declaration mentioned, the defendant, by leave of the court, &c. saith, that he is not guilty of saying and publishing the following words; that is to say, the word "fraudulently," the words "entitled" and "were entitled," the words "and state of *Maryland*," the word "suits," and the words "that he was in such habits of intemperance as to be unfit to discharge the duties of any office," (which words are alleged in the said declaration to have been spoken and published by this defendant of the plaintiff,) in manner and form as the plaintiff hath thereof complained against him, and of this he puts himself upon the country," &c. 3. "And, as to the residue of the said several words, alleged in the plaintiff's declaration to have been said and published by the defendant of the plaintiff,

f

the defendant saith, that the plaintiff his action aforesaid

thereof against him to have or maintain ought not, because
he saith, that before the speaking and publishing of the
said residue of the said several words, to wit, on the, &c.
two negroes named W. T. and D. T.. (who are the same
negroes in the plaintiff's declaration mentioned, of whom
the discourse in the said declaration stated was held, and
no other,) by the defendant, their attorney, filed in the
circuit court of the district of *Columbia*, in and for the
county of *Washington*, a certain petition, in the words
following; that is to say, [Here follows the petition of W.
T. and D. T. stating, that they were detained illegally in
slavery by *A. Scott*, though they were entitled to their
freedom, and prayed process against *Scott*, &c.] And the
defendant avers, that the said *A. Scott*, in the said petition
named, is the same person as the said *A. Scott* in the said
declaration named, the plaintiff in this cause.    That
the said petition being read-and heard, the said circuit
court ordered that a *subpena* issue forth out of the said
circuit court against the plaintiff, returnable to the next
term of the said court; which *subpena* is as follows: [Here
follows the said *subpena* in the usual form.] That the said
*subpena* did issue forth as ordered by the said circuit court,
and that before the return thereof to the said court, and
before the service thereof on the plaintiff, to wit, on, &c. at,
&c. the plaintiff forcibly seized and transported the said ne-
groes W. T. and D. T. from the said district of *Columbia*, and
sold to the south the said negroes, who had petitioned for
their freedom as aforesaid, he well knowing that the said
negroes had petitioned for their freedom, and had a suit
depending in the court aforesaid for establishing their free-
dom; wherefore the defendant, in a discourse of and con-
cerning the premises, which is the same discourse in the
plaintiff's declaration mentioned, and no other, did say,
that he, meaning the plaintiff, had transported from the dis-
trict of *Columbia*, and sold to the south, negroes who had
petitioned against him, meaning the plaintiff, for their free-
dom, he, meaning the plaintiff, well knowing that the said
negroes had petitioned for their freedom, and had a suit
depending in the circuit court of the district of *Columbia*,
for the county of *Washington*, for establishing their free-
dom, as it was lawful for the defendant so to do for the
cause aforesaid; and this, &c. whereof, &c.    4. And for

further plea, &c. that as to the speaking and publishing of the said several words of the plaintiff as in the plaintiff's declaration, the said several words were not spoken and published of the plaintiff, by the defendant, in the said county, or in any part or place of the state of *Maryland*, but the said words, spoken and published by the defendant of the plaintiff, as by him alleged, were spoken and published out of the limits and jurisdiction of the said state of *Maryland*, in foreign parts, to wit, in the city of *Washington*, and District of *Columbia;* and this, &c. wherefore, &c. The plaintiff joined in issue to the *first* plea, and demurred specially to the *second, third*, and *fourth* pleas, because they were immaterial and destitute of form, and double, and utterly insufficient in law to compel the plaintiff to answer thereunto; and he assigned as causes of demurrer, 1st. That the *second* plea by the defendant is a plea which amounts to the general issue, and therefore the general issue should have been pleaded, and not a special denial. 2d. That in the *second* plea the defendant, instead of putting in issue all the words alleged in the declaration, tenders issue on part of the words which are immaterial. 3d. Because in the *second* plea the defendant has put in issue the words "*fraudulently*," "*entitled*," and "*were entitled*," and "*state of Maryland*," "*suits*," and "*that he was in such habits of intemperance to be unfit to discharge the duties of any office*," all of which are immaterial by themselves, and therefore not proper subjects for an issue to be tried by a jury. 4th. Because in the *third* plea there is a justification pleaded without any confession of the injury complained of and intended to be justified, by the said plea. 5th. That in the *third* plea the defendant hath pleaded a special justification, which is in point of law no justification at all, because he says, that the negroes mentioned in the said plea had petitioned for their freedom, and the plaintiff knew thereof, whereas he should have said that the process of the said court had been served on the plaintiff. 6th. Because the words justified by the defendant in the *third* plea are not the same words which are alleged in the declaration. 7th. Because in the *fourth* plea the defendant has denied the uttering and publishing the words alleged in the declaration, in the said county, or any where in the state of *Maryland*, although *Charles* county, in the state of *Maryland*, is laid in the declaration

only by way of venue. 8th. That in the *fourth* plea the defendant has therein taken for defence, that the words alleged in the declaration were not spoken in any part of the state of *Maryland.* The. defendant joined in the demurrer, and the county court, [*Johnson*, Ch. J. and *Plater*, *A. J.*] ruled the demurrers good:

June 1822.

Law
vs
Scott.

1. At the trial below, the plaintiff offered in evidence. the deposition of *Armistead T. Mason*, taken under a commission issued in this cause, to *William Chilton*, and others, of the state of *Virginia*. The commissioners in their return. stated, that having first taken the oath prescribed by the commission annexed, and administered the oath to *W. C.* appointed by them as clerk to attend the. execution of the said commission, did at, &c. on, &c. proceed to take the deposition of General *Armistead T. Mason*, on interrogatories, &c. he having been. previously sworn by *J. M.* one of the said commissioners, &c. The. defendant objected to the deposition being read in evidence, because no notice was given to him of the time when and, where the deposition was taken, as specified in the following exceptions, made in writing before. the jury was. sworn, viz. "The defendant excepts to the. whole of the. deposition of *Armistead T. Mason* returned in this cause, and taken under a commission issued to *W. C.* &c. 1. Because the said deposition was taken without any previous notice to. the defendant of the time and place of, executing said. commission, without his knowledge thereof, and without any opportunity being afforded to him to cross examine the said witness." The county court gave the following opinion: The trial in this case was brought on by consent, and no. application was made by either party; for a continuance of the. cause; and the court being satisfied, that before the commission. issued, copies of the original and additional interrogatories were served on one of the defendant's counsel, over rule the exceptions; and are of opinion, that the objection to. the execution. of the commission cannot be sustained, and permit the deposition to be read; and the same was read in evidence to the jury. The defendant excepted.

2. The plaintiff then produced in evidence the. deposition of *William T. Barry*, taken under a commission issued in this cause to *John Bradford*, and others, of the state of *Kentucky*. By the return of the commissioners

June 1822. they stated, that having been first duly sworn according to the annexed oath, and appointed *L. C.* clerk, who was also duly sworn, (certificates of which oaths were annexed,). they proceeded to examine *William T. Barry* on oath, and caused his answers to the interrogatories of the plaintiff to be committed to writing, viz. *"Answer* to the first interrogatory. That he was a member of the senate of the *U. S.* during the first session of the fourteenth congress. *Answer* to the 2d. That he was present in the said senate when the plaintiff was nominated by the president of the *U. S.* to that body for their consent or confirmation for a certain office or appointment. *Answer* to the 3d. That the plaintiff was nominated to the office of commissioner under the act of congress approved the 9th of April 1816, entitled, &c. *Answer* to the 4th. That he had conversation with the defendant relative to the character and qualification of the plaintiff, after the nomination was made, but before it was acted on by the senate. *Answer* to the 5th. He cannot recollect the words the defendant made use of, but it was in substance, "that Mr. *Scott* was addicted to habits of inebriety, and that he had run off and sold negroes that had sued for and were entitled to their freedom." *Answer* to the 6th. He believes that he stated in the senate the purport of this conversation. He is very certain that he stated to the senate the impressions he had received from the conversation with the defendant, and a record that was placed in his hands by Mr. *Wallock,* as to the improper conduct of the plaintiff, in taking away negroes who had sued for their freedom, pending the suit, sending them off to an adjoining state, and selling them. *Answer* to the 7th. The deponent states, that the nomination of said *Alexander Scott* was rejected by the senate. *Answer* to the 8th. He cannot undertake to say what influenced the minds of other members of the senate, but believes his statement did have an influence prejudicial to Mr. *Scott. Answer* to the 9th. That the charges as above stated had injured Mr. *Scott,* (a stranger to this deponent,) deeply in his estimation, and that he acted under the influence they had upon his mind in voting against the nomination; for this cause he opposed his nomination, and made known the circumstances that induced him to do so, which he has reason to believe had influence with other members of the senate.

*law
vs
Scott*

*Answer* to the 10th. The annual salary of the office was
$2000, but a reference to the act of congress will best
show this." The plaintiff, to lay a foundation for receiv-
ing other evidence than the journals of the senate of the
*U. S.* to establish the nomination and rejection of the
plaintiff to the office mentioned in the above deposition,
produced and read in evidence the deposition of *Robert H.
Goldsborough,* one of the senators of the *U. S.* viz. To
the *first* interrogatory, Whether he was a member of the
senate of the *U. S.* when the plaintiff was nominated, &c.
He answered that he was. To the *second,* Whether he
was a member of the military committee, and was present,
&c. He answered that he was a member of that com-
mittee, and present in the senate. To the *third,* Whether
he had, prior to that time, ever heard any thing favourable
or unfavourable to the character of the plaintiff? He an-
swered that he had previously to that time, and some time
before, heard a favourable character of the plaintiff from
a respectable gentleman in *Maryland.* To the *fourth,*
What was the nature of the statements of *William T.
Barry,* esquire, a member of the senate, to that body,
respecting the plaintiff? He answered, that it was wholly
incompatible with the duties of the public station he held
to state the proceedings of the senate when acting in its
capacity of the executive council. To the *fifth,* whether
the plaintiff, through his agency, did not endeavour to ob-
tain a removal of the injunction of secrecy of the senate,
so far as respected his nomination, and the proceedings
thereon, and what was the issue of the attempt? He an-
swered that he did, nor could he obtain either the one or
the other. To the *sixth,* he answered that he never heard
the plaintiff was not a man of business. The defendant
objected to the following words, contained in *William T.
Barry's* answer to the *seventh* interrogatory, to wit:
"The deponent states, that the nomination of said *Alexan-
der Scott* was rejected by the senate." The court were
of opinion that the objection could not be sustained, and
therefore permitted those words to be read. The defen-
dant excepted.

3. The plaintiff then produced and read in evidence the
deposition of *Armistead T. Mason,* taken under a commis-
sion issued in this cause, to *William Chilton* and others,
of the state of *Virginia.* In answer to the *first, second,*

 

June 1822.
Law
vs
Scott

*third*, and *fourth* interrogatories, he answered, that he was a member of the senate of the *U. S.* when the plaintiff was nominated by the president to the office of commissioner, &c. and that it was rejected by the senate. To the *fifth*, By what member of the senate were certain charges tending to criminate the plaintiff brought forward, and what was the nature of the said charges? He answered, that to the best of his recollection Mr. *Barry* did state to the senate, in substance, that he had understood from Mr. *Wallock*, or the defendant, or perhaps from both those gentlemen, that the plaintiff was addicted to habits of inebriety, and that he had been guilty of selling negroes who were entitled to their freedom; and that they, Mr. *Wallock* and the defendant, or one of them, had put into his hands, to corroborate the last charge, a copy of a record, which he exhibited, and from which, the deponent thinks, he read an extract to the senate. To the *sixth*, Whether the rejection of the plaintiff by the senate was occasioned entirely by the charges above mentioned, or what effect had they on the senate in making the appointment? He answered "It is obviously impossible for me to tell what influenced different gentlemen in their votes on the nomination, but the charges above mentioned, from their character, could not have failed to have produced its rejection, even if there existed no other reason for it, and they doubtless, I presume, had a very considerable effect in producing it; they certainly prevented me from voting for the nomination, which I had intended to do, having a short time before been most favourably impressed towards Mr. *Scott*, by Col. *Monroe*, the present chief magistrate of the *United States*, who spoke of him to me in the most flattering terms." To the *second* additional interrogatory, "Were your impressions as to the character of *Alexander Scott*, prior to his nomination, favourable or unfavourable, and were they derived from a respectable source?" He answered, "They were very favourable, and were derived from a most respectable source, from the present chief magistrate of the *United States*, and a letter from the late honourable *Richard Brent*, of *Virginia*." The defendant objected to the deposition going in evidence to the jury, because, as he alleged, he had no notice of the time and place when and where the evidence was to be taken; the defendant having, before the jury was sworn in this cause, entered

the following exceptions, in writing, against the said evidence, which exceptions are stated in the *first* bill of exceptions. The defendant also objected to the following words in the deposition of Gen. *A. T. Mason* in his answer to the *sixth* interrogatory, to wit: "But the charges above mentioned, from their character, could not have failed to have produced its rejection, even if there existed no other reason for it; and they doubtless, I presume, had a very considerable effect in producing it—they certainly prevented me from voting for the nomination, which I had intended to do, having a short time before been most favourably impressed towards Mr. *Scott* by Col. *Monroe*, the present chief magistrate of the *United States*, who spoke of him to me in the most flattering terms." And also to the words following, in the answer to the *second* additional interrogatory, "and were derived from a most respectable source—from the present chief magistrate of the *United States*, and a letter from the late honourable *Richard Brent*, of *Virginia*," and prayed that the same might not be read in evidence to the jury. But the court was of opinion that the passages of the said deposition objected to, were competent and legal evidence. It was proved to the satisfaction of the court, that before the said commission was taken out, a copy of the interrogatories filed by the plaintiff, a copy whereof went with the commission, was served on *C. Dorsey*, one of the counsel in the cause of the defendant, a sufficient time before the commission was sent out, to have filed cross interrogatories, if he thought proper so to do. No other evidence appeared to the court preparatory to the execution of the commission. The court was of opinion, that the service of the interrogatories, as stated, was sufficient, and therefore overruled the objections, and permitted the deposition to be read; and the same was read. The defendant excepted.

4. This bill of exceptions was sent up by mistake, it being similar to the preceding.

5. The defendant, to disprove the averments in the plaintiff's declaration, and to show the unfitness of the plaintiff for the office to which he was nominated by the president of the *U. S.* as mentioned in the declaration, and to show that the plaintiff is not entitled to the damages which he claims in his declaration, offered to read in evidence the deposition of *John F. Gibney*, taken under an

June 1822.

Law
vs
Scott

agreement entered into by the parties, viz. To the *second* interrogatory, he answered, that the plaintiff, while at the island of *Porto Rico* in 1813, gave an order to deponent on the house of *T. F. Gamble* & Co. of the island of *St. Thomas*, to receive a quantity of plate, stated by him to be his property; in case of deponent's receiving said plate; a part was to be appropriated for the payment of merchandize, among which was a case of diapers that had been previously agreed upon with a merchant in *St. Thomas* by Mr. *Scott*, which goods Mr. *Scott* informed deponent, were to be brought into the *United States*, stating that he had no apprehension of any package of his being examined. *T. F. Gamble* refusing to give up the plate to deponent, he could not procure the goods. This deponent understood at the same time from said *Scott*, that he had a quantity of other goods to bring into the *U. S.* Deponent asked said *Scott*, at the same time, if he did not apprehend that the said goods would be seized if brought into the *U. S.* and said *Scott* answered, that he had no fears on that score, as from his situation any of his packages would not be examined. To the *fourth* interrogatory— "From your knowledge of the said *Scott* do you consider him to be a man of business"? He answered—"He knows very little of him, having had only a few interviews with him." To the *fifth*, "Do you know, or did you ever hear, that Mr. *Scott* was intemperate?" He answered—"He does not know of his own knowledge; but that he has heard in general conversation that the opinion was that he was intemperate." The plaintiff objected to the answers given by the witness to the *second* and *fourth* interrogatories—And the court thereupon decided, that the said answers were not evidence in this cause, and refused to let the same be read, because the imputed misconduct on the part of the plaintiff in a particular instance, was inadmissible. The defendant excepted.

6. The plaintiff then produced and offered to read in evidence, the commission issued in this cause to *William Nutting*, and others, of the state of *Vermont*, on the 20th of November 1817, and the deposition of *Dudley Chase* taken thereunder, on the 21st of January 1819. The defendant objected to the testimony, taken under that commission, being read in evidence, because the defendant had no notice of the time or place of executing the said

commission, and the same appeared to have been executed and returned by three of the commissioners named in the commission on the very day that they qualified under it, and without any opportunity being afforded to the defendant of taking any testimony under the said commission. It was proved, on the part of the plaintiff, that a copy of the interrogatories put to the witness under the commission, was served on *C. Dorsey*, esquire, one of the attorneys of the court, who did not appear on record as attorney for the defendant until the 30th of March 1818, when the pleadings on the part of the defendant were filed in this cause, but who appeared at the appearance term as counsel for the defendant, and argued on his part against the motion to hold the defendant to bail; and who at the same time stated he was not counsel of record, and requested the witness to serve them on the defendant, and did not receive them; that the same were served on him *(Dorsey,)* some time in the month of November 1817, and a short time before the commission was sent by the clerk to the plaintiff. And it was also proved to the court, that the defendant himself wrote to the clerk for a copy of the said interrogatories, and that they were sent to him by the mail, and the commission retained in the office until sufficient time had elapsed to receive the cross interrogatories. There was no proof that the defendant ever had any notice of the said commission ever having been sent on by the plaintiff to *Vermont*, nor did the defendant ever apply for such information, or ever intended to proceed under the said commission. And when the same was sent on, to whom, except that it was returned in due form by the commissioners, sealed and directed, did not appear to the court; nor was any information given in relation thereto, or any intention expressed to the defendant to proceed under the said commission, until the said commission and return were handed this day to the court, although the jury was yesterday empannelled to try the cause; but in consequence of the indisposition of one of the jurors, a juror was withdrawn by consent, and another sworn after the said commission was received by the court, and communicated by the court to the parties. The court was of opinion, that the testimony taken under the said commission was admissible in evidence, and the same was accordingly read. The defendant excepted.

7. The defendant then offered in evidence the commis-- sion issued in this cause to *William Sampson*, and others, of the state of *New York*, and the testimony taken there- under, being the depositions. of *Aaron H. Palmer, Isaac Kipp, Abraham S. Hallett, John Kearney* and *James Sea- ton*, relative to the baggage belonging to the plaintiff, brought by him as a passenger, &c. to the port of *New York*, and to show that certain articles, liable to duty, but upon which no duty was paid, was sold for the plaintiff to the amount of $1035 65, &c. But the court refused to admit the said testimony. The defendant excepted.

8. The defendant then submitted the following prayer to the court, viz. That if the jury shall find from the evi- dence in this cause, that the defendant spoke the words as laid in the declaration, and that at the time when the same were spoken, he had been requested by a senator of the *United States* to give him information of the fitness of the plaintiff for the said office, and at the same conversation referred the said senator to the records of the circuit court of *Washington*, in the District of *Columbia*, for the confirmation of the said statement, that then they must find a verdict for the defendant. Which opinion the court. [*Johnson*, Ch. J.] refused to give. The defendant excepted.

9. The plaintiff then produced a witness, *Edmund Key*, who gave evidence, that the plaintiff was a man, from his talents, education and character, qualified to discharge the duties of the office in the declaration stated. The de- fendant, to prove that the plaintiff was unworthy and unfit· to hold the office in the declaration mentioned, produced as a witness *Samuel R. Hughes*, a competent and legal wit- ness, and offered to prove by him, that the plaintiff, hold-- ing a commission under the government of the *United States*, to see to the tendering of certain provisions in the name of the said government to that of *Venezula*, which provisions were purchased under the act of congress of the 8th of May 1812, declared to the said witness, in April 1813, that he intended to purchase a quantity of dry goods, and to import such goods into the *U. S.* without paying duty thereon, and at the same time the plaintiff asked the witness, whether he thought it would be improper for him, the plaintiff, to import the said goods as aforesaid. That the plaintiff did, in pursuance of such intention, purchase

in the *West Indies*, to wit, in the island of *St. Thomas*, a quantity of dry goods of the value of about $1000, and brought the said goods with him to the island of *Porto Rico*. That the said dry goods were principally of *British* fabric, and that the island of *St. Thomas* was, at the time of the said purchase, under the dominion of the government of *Great Britain*. That the plaintiff did afterwards, in May 1813, import the said goods into the *United States*, to wit, into the port of *New York*, and that he offered a part of the said goods to the witness in payment of a certain sum of money due from the plaintiff to the witness, in the city of *New York*. That the plaintiff, in conversation with the witness, confessed the truth of the above facts in March 1819. But the court decided that the said testimony was inadmissible. The defendant excepted.

*Agreement* entered into by the counsel of the parties, viz. "Inasmuch as *Leonard Mudd*, one of the jurors sworn in this cause, is now sick, and unable to attend, therefore we agree that the remaining eleven jurors, now sworn in the case, shall render a verdict as if all the twelve were empannelled. We wave all objections that could not be made if the verdict were given by the twelve, the eleven concurring. It is agreed further, that the said verdict shall have with it, and incidental to it, all powers on both sides to take exceptions, remove by appeal, sue out writ of error, and in short do all matters and things as if the verdict were rendered by the twelve." *Verdict* by the remaining eleven jurors was rendered for the plaintiff, and damages assessed to $5000 current money. There was a motion by the defendant for a new trial, and the reasons assigned were, 1st. That the jury misconceived the directions of the court to the jury. 2d. That the verdict was against evidence. 3d. That there was no evidence to prove the words laid in the declaration; and 4th. That the damages are excessive. The court overruled the motion, and rendered judgment on the verdict. The defendant appealed to this court.

The cause was argued before BUCHANAN, EARLE, and DORSEY, J.

*Harper* and *Magruder*, for the appellant, contended, 1. That the action, by the appellee's own showing in his declaration, could not be maintained.

2. That the declaration was defective in this, that it does not state that *William T. Barry*, or any other sena- tor with whom the appellant discoursed, communicated such discourse to the senate of the *United States*, and that it did not appear or follow, that the refusal of the sena- tors, (with whom the appellant discoursed,) to concur in the nomination stated, caused the rejection of the said no- mination.

3. That the alleged words, not having been stated to have been spoken to the senate of the *United States*, the constitutional tribunal to decide on nominations to office under the *United States* government, the rejection of the appellee's nomination by the senate could not be charged on the appellant.

4. That the special damage was not explicitly or parti- cularly stated, and was impossible to be connected with the cause assigned for it, and was not the natural or legal consequence of the alleged slander.

5. That the words in the declaration laid were not ac- tionable of themselves.

6. That there never was such an office established or recognized by the laws of the *U. States* as commissioner of claims, &c.

7. That the demurrer to the second plea, stating the discourse that actually took place, and justifying such dis- course, (with a plea of not guilty to the residue of the dis- course alleged in the declaration,) ought to have been over- ruled by the court below.

8. That the demurrer to the third plea, which alleged that the words charged in the declaration were spoken in a foreign jurisdiction, to wit, in the district of *Columbia*, ought not to have been supported.

9. That the depositions of *Armistead T. Mason*, *Wil- liam T. Barry*, and *Dudley Chase*, taken under commis- sions, as stated in the *first*, *second*, *third*, and *sixth* bills of exceptions, ought not to have been admitted in evidence: 1st. Because no notice was given to the appellant of the time and place of executing said commissions. 2d. Be- cause service of a copy of the appellee's interrogatories on *Clement Dorsey*, whose name did not appear at that time on the docket as the appellant's counsel, was not due service. 3d. Because no issue was joined between the parties in the action when the commissions issued. 4th,

Because the deponent, *Armistead T. Mason,* was not June 1822, sworn by the commissioners, or a majority of them, named in the commission directed to *William Chilton* and others. 5th. Because it did not appear what oath was administered to the clerk of the said commission. 6th. Because it appeared that the clerk of the commission directed to *John Bradford,* and others, was not duly sworn. 7th. Because the commission directed to *William Nutting,* and others, and the deposition of *Dudley Chase* taken under it, were returned to the court after the jury were sworn.

10. That no testimony ought to have been admitted to prove the nomination of the appellee to the senate to fill the office alleged, or to prove the rejection of the said nomination, except transcripts of the record of the senate, or other written evidence.

11. That no evidence was admissible to prove for what cause the said nomination was rejected, except a resolution of the senate to that effect.

12. That the senate of the *U. States* having refused to remove the injunction of secrecy so far as respected the appellee's alleged nomination and the proceedings thereon, no testimony ought to have been admitted of what occurred in the senate while acting in its capacity of the executive council.

13. That the passages in *A. T. Mason's* deposition, contained in the *third* bills of exceptions, ought not to have been admitted in evidence for the reasons aforesaid; and further, 1st. Because it was hearsay. 2d. Because his vote was not affected by the appellant, but some other person. 3d. Because it contained matters of opinion and belief as to the motives of others.

14. That the same objections apply to *Wm. T. Barry's* answers to the appellee's 8th and 9th interrogatories in the *second* bill of exceptions.

15. That the deposition of *John F. Gibney,* and the depositions taken under the commission directed to *William Sampson,* &c. and the testimony of *Samuel R. Hughes,* ought to have been admitted in evidence under the circumstances stated in the *fifth, seventh,* and *ninth* bills of exceptions; and because the act of congress of the *United States,* commonly called the act for the collection of duties, incapacitates the person guilty of the offences therein charged from holding any office under the *United States* for the space of five years.

JUNE 1822.

Law
vs
Scott

16. That the instruction prayed by the appellant in the *eighth* bill of exceptions, ought to have been given to the jury; because, if the appellant spoke the words in the declaration alleged, with a reference to the records of the circuit court, mentioned by way of confirmation or otherwise, it materially varies the words from those laid in the declaration; and if the appellant spoke the said words, in reply to an enquiry of a senator of the *U. States* wishing information, &c. they were not actionable. They insisted that the action could not be maintained; that the court would not sanction actions against public policy; and that the archives of the executive could not be examined into for private information. *Marbury vs. Madison*, 1 *Cranch*, 137. That to support this action there must be express malice proved. *Rogers vs. Cliffton*, 3 *Bos. & Pull.* 594, *Weatherston vs. Hawkins*, 1 *T. R.* 111. *Astley vs. Younger*, 2 *Burr.* 807. *Thorn vs. Blanchard*, 5 *Johns. Rep.* 508. *Lake vs. King*, 1 *Saund.* 131, (and *notes*,) 4 *Bac. Ab.* tit. *Libel*, (A.) 452. *Bull. N. P.* 8. *Brooker vs. Coffin*, 5 *Johns. Rep.* 188, 191. That where a special injury resulted from the words spoken, the declaration must accurately describe the special damage; and the *allegata* and *probata* must agree. 2 *Phill. Evid.* 107, 114. *Ashley vs. Harrison*, 1 *Esp. Rep.* 48. *Vicars vs. Wilcocks*, 8 *East*, 1. *Bull. N. P.* 7. That the words in themselves were not actionable, the act of 1796, *ch.* 67, *s.* 15, not making the transporting of negroes an indictable offence, so as to subject the party to infamous punishment; that act punished the party with working on the roads if he did not pay the fine. They referred to the act of 1809, *ch.* 138, *s.* 10, and cited *Buys vs. Gillespie*, 2 *Johns. Rep.* 115. *Brooker vs Coffin*, 5 *Johns. Rep.* 188. That there were, in fact, but three pleas, although the demurrers stated that there were four. That the *first* was the plea of *not guilty*; the *second*, was *not guilty* of part, and *justification*, setting forth the words spoken, &c. *Cromwell's* case, 4 *Coke*, 12. And the *third* was, that the words, if spoken, were spoken out of the jurisdiction of the state. *Mostyn vs. Fabrigas*, 1 *Cowp.* 161. That the *verdict*, being by *eleven* jurors, was erroneous, which irregularity could not be cured by consent. 1st. That a release of errors made before verdict was a void release; and 2d. That no consent could give jurisdiction. That the evidence admitted in the se-

*cond* bill of exceptions was not legally admissible to establish the fact of the nomination by the president, and the grounds upon which it was rejected; that it should have been record evidence. That no foundation was laid for the admission of parol evidence. 1 *Phill. Evid.* 322.

On the *fifth*, *seventh*, and *ninth* bills of exceptions, they referred to the act of congress of March 1799, *ch.* 128, *s.* 50. 2 *Phill. Evid.* 109, 115.

On the *sixth* bill of exceptions, they insisted, that as the commission and testimony were not returned until after the jury were sworn, a continuance of the action should have been ordered; that on the substitution of a new juror in the place of the one that was sick, if considered a new jury, only one was sworn.

On the *eighth* bill of exceptions, they cited *Le Caux vs. Eden, Dougl.* 601, 602. *Thorn vs. Blanchard,* 5 *Johns. Rep.* 508.

*Taney, Winder,* and *A. C. Bullitt,* for the appellee, contended, that the words in themselves were actionable under the act of 1796, *ch.* 67, *s.* 15, which is in force in *Columbia,* and that our courts notice such acts as are in force in that District. *Davidson's Lessee vs. Beatty,* 3 *Harr. & M'Hen.* 620. That where there was a plea of not guilty as to part, and justification as to certain of the words, and not guilty as to the residue, and the words justified are taken out, then the remaining words would be nonsense, and mean nothing. That a plea producing such an effect could not be considered as an answer to the declaration. That as to the *third* or *fourth* plea, if any action was transitory in its nature, it was slander, and *Mostyn vs. Fabrigas,* if it proved any thing, it was that this was a transitory action; so that it was of no consequence where the words were spoken. *Holt's L. L.* 299, *(note)*. *Glen vs. Hodges,* 9 *Johns. Rep.* 67. That if the court had no jurisdiction, then the plea should have been pleaded in abatement. That the irregularity of the *verdict* was cured by the consent of the parties. 2 *Bac. Ab.* tit. *Error,* (K.) 496, 497, (and *notes*). *Wright vs. Nutt,* 1 *T. R.* 388. 3 *Bac. Ab.* tit. *Juries,* (K.) 777. That the spirit and meaning of the agreement was, that it should appear by the record that the verdict was given by the twelve jurors. That if it was not considered technically as a verdict given by

twelve jurors, it might be taken, under the agreement, as a reference to, and an award by eleven men. That to consider it a verdict was to save the rights of the defendant, so that he might have the benefit of his bills of exceptions. That when a party had diverted another from his legal course of proceeding, he never should take advantage of those errors he had induced his adversary to commit. *Camden vs. Edie*, 1 *H. Blk. Rep.* 21.

On the *first*, *second*, and *sixth* bills of exceptions, as to the manner of executing commissions to take testimony, they referred to *Hind's Pr.* 362.

On the *second* and *third* bills of exceptions, as to the answers of *Barry* and *Mason* to certain interrogatories, they insisted, that the defendant, after due notice of the interrogatories, made no objections, and thereby waved his right of objection, and consented to the questions being answered. That the objection to the answer of *Barry* to the seventh interrogatory, ought not to be sustained, because there is no known rule of law to exclude the evidence of senators, nor any rule of the senate which had been violated. That the constitution provided that the senate should keep a journal of their proceedings; and there was no evidence that they kept a secret journal, or what it contained, if they did keep one, whether of nominations to office, and rejections thereof. That the extent of the obligation of secrecy was not in proof; but that it was in proof, that it might be, and that it had been disclosed. That the court were not to say there was any obligation of secrecy, so as to reject the evidence as not admissible—But that before it was rejected, the court should be satisfied that it was a violation of some moral obligation, as there was no reason why the senate should keep secret any thing more than their journal, not that which might be uttered in their hearing as a slander against an individual. That unless there was proof that there was a record kept of nominations to office, and rejections of such nominations, the evidence was admissible; and if there was a secret journal which could not be come at, then it could be supplied by secondary evidence. But they contended, that the secret journals of the senate were not records, and could not be assimilated to the records of a court. That the whole being secret, they could be come at, only by secondary evidence; so that the foundation for such evidence, if it could not be

proved by parol, could never be laid. That a capricious power exercised by a body, could not exclude a party from proving any fact upon which that body might have acted, or any proceeding which might have taken place therein. That here the evidence was not objected to before the commissioners, as is the practice in chancery; and that not being objected to, it mislead the plaintiff, who supposed that the evidence would not be objected to. But they contended, that the testimony in itself was not exceptionable. That as to what was opinion, and what was fact, had not been very clearly defined. That general reputation of a man's character is said to be a fact. That the character of a man's mind was a fact. That if a man was asked if another had a weak mind, &c. by his answer he would express an opinion. That whether a man suffered pain, must be judged from appearances, and given as opinions, and yet it had been received as testimony. That a man speaking doubtfully of a fact, was received as evidence as far as it went. That one object to be derived from Gen. *Mason's* testimony was the effect the information coming from the defendant produced in the senate. That the cast of mind of the senators, and their character, are all matters of fact. That this slander depended on the character of the senators, and the cast of their mind. That to know whether a particular piece of news created an excitement among the crowd, must be judged of by appearances. That where the testimony was received through the senses, and it was expressed doubtingly, it was to be admitted, as all evidence was where a man did not swear positively to the fact. That in many other instances, which they enumerated, opinions might be given in evidence, and that this was one in which it might be done. That the journals of the senate, if produced, would not show the reasons which governed the senators in their rejection of the nomination; that could be known only from the individual senators. That the reason why all the senators had not been examined, was occasioned by the defendant's not objecting to the question propounded to the witnesses who were examined.

On the *fifth, seventh,* and *ninth* bills of exceptions, they insisted, that the evidence was properly rejected. That if that evidence had been admitted, it would be compelling the plaintiff to defend every act of his life. That he could not be deprived of his office, although he might have been

June 1822.

Law
vs
Scott

guilty of smuggling; for until he was convicted of the charge, it would not have affected him.

On the *sixth* bill of exceptions, relative to the substitution of a new juror, &c. and proceeding to the trial of the cause after testimony had been returned, they cited 3 *Bac. Ab.* tit. *Juries,* (K.) 777, and contended, that the return of the testimony taken under a commission, after the jury were sworn, could make no more difference than if a new witness had been produced after the trial had commenced.

On the *eighth* bill of exceptions, they insisted that dangerous consequences would be the result, if a person, upon being required by a senator to give information as to the fitness, &c. of another for office, should be permitted to slander that other. That his reference to the records of a court, to justify his assertions, should not screen him from punishment, as it was not conclusive that there was no malice by such reference. That under the defendant's prayer in this exception, it mattered not with what motive the information was given, and although the jury might find the words were false, and that the defendant knew they were false, and that he spoke them with malice, yet the jury must have found a verdict for the defendant if the prayer had been granted. That if the words spoken were conformable to the record, still if they were spoken with malice, and with an intention to injure the plaintiff, they were actionable. That the case of *Thorn vs. Blanchard* went upon the ground of the absence of malice, and was a strong authority in favour of the plaintiff.

EARLE, J. delivered the opinion of the court. We do not agree with the judges of *Charles* county court in the opinions they pronounced in the *third* and *eighth* bills of exceptions in this record.

In our apprehension the court ought not to have permitted the plaintiff to lay before the jury the following passage in the deposition of General *Armistead T. Mason:*—"But the charges above mentioned, from their character could not have failed to have produced its rejection, even if there existed no other reason for it; and they doubtless, I presume, had a very considerable effect in producing it." This is not a deposition to facts only, resting in the immediate knowledge and recollection of the witness, but is a plain expression of his opinion upon subjects intimately

connected with the discussion, and we think was wholly inadmissible.

It appears to us that the court below erred also in refusing to give to the jury the opinion prayed for by the defendant in the *eighth* bill of exceptions. This exception, by an agreement between the parties, embodies all the testimony in the record, and with this before them, it is our idea the court ought to have declared to the jury that the action was not sustained; falsehood and malice are the gist of the action for defamation, and where they are not implied in the words themselves, they must be expressly proved. They appear no where in this cause to have been thus proved by the plaintiff, and they are not implied from the occasion of speaking the offensive words stated in the declaration, as they were not officiously volunteered, but were spoken confidentially to a senator of the *United States*, requesting information in relation to the plaintiff's fitness and qualifications for an office to which he had been nominated by the president.

We concur with the opinions delivered by the court below in all the other bills of exceptions, as we do in those pronounced by them on the demurrers.

Reasons for this opinion of the court would have been given much more at large, and perhaps they would have embraced other topics drawn into discussion in the argument, if, continually since it closed, one of the members of the bench had not been unfortunately absent from us.

We reverse the judgment, and direct a *procedendo*.

JUDGMENT REVERSED, &c.