Calvert *vs.* Coxe.—1843.

CHARLES B. CALVERT, EXECUTOR OF GEORGE CALVERT, *vs.*
RICHARD S. COXE.—*December* 1843.

In the absence of all proof to the contrary, judicial courtesy requires this
court to presume, that the county court discharged its duty according to
the rules and practice of such court, in awarding a commission to take
testimony.

So where the county court assembled on the *first* day of the month, and
proceedings were had in a cause, which resulted in the withdrawal of a
juror, and on the *twenty-seventh* of the following month, the court ordered
a commission on the motion of the plaintiff to be issued; but it did not appear
when such motion was made, nor when, nor by whom commissioners were
named, it is fair to presume, either that the defendant did name and strike
commissioners, or that after reasonable notice, he failed to do so.

The motion of a suitor seeking a commission to take proof, is that a com-
mission be issued, naming the place to which he wishes it to be addressed.
The court then grants the usual order to name and strike commissioners.

The power of selecting the time and place of executing a commission to take
testimony, addressed to commissioners out of Maryland, is confided by the
terms of the commission, to their sound discretion.

A commission, addressed to commissioners of the *District of Columbia*, may
be executed in *Virginia*.

In the execution of a foreign commission, no notice to the parties of the time
and place of its execution is necessary. All the notice required, is that of
the interrogatories sent out with the commission. Actual or constructive
notice should be given to the opposite party in time for him to exhibit cross
interrogatories before the transmission of the commission.

Five days notice given to a defendant, a resident of *Maryland*, of the time
and place of executing a commission in *Virginia*, about forty miles distant
from his residence, is sufficient, and it is no objection that it was executed
at the private residence of the witness.

A witness cannot be permitted to state the contents or effect and operation of
a written instrument without producing it.

Facts proved on a former trial by a deceased witness, are admissible on a se-
cond trial of the same case. They could only be rejected on the presump-
tion, that facts were proven on the first trial, which were inadmissible as
evidence, which is not to be intended. The reasonable presumption is, that
such facts were alone proved as were admissible. The court should act
on this presumption upon the offer of proof of the deceased witness' testi-
mony, until the contrary appeared.

A defendant who places his defence upon the finding by the jury, "that the
compensation claimed by the plaintiff of the defendant, was, according to
the agreement of the parties, to be paid out of the estate of C, in the hands
of the defendant's testator," cannot ask the court to instruct the jury, that
his testator was not personally liable, though the compensation had not

been paid. The failure to pay out of C's estate was a breach of the contract, for which the testator was personally liable.

In an action to recover compensation for professional services, the defendant placed his defence upon the finding by the jury, that a sum certain paid to the plaintiff, "was, according to the contract between the parties, to be paid upon the contingency of the *final decision* of the cause in favor of C's will," and if they so found, then the plaintiff was entitled to no additional compensation. At the time of making the contract, the law did not authorise, but shortly after the verdict in the will cause, an act was passed, which did authorise an appeal in such cases; services were rendered upon an appeal, and subsequently upon the reversal of the first judgment. The compenpensation first agreed upon had been paid between the time of rendering the verdict and the passage of the act authorising an appeal; HELD: as there was other evidence tending to show, that by additional or subsequent agreement, the defendant's intestate promised to pay the plaintiff a further compensation, that question was open for the consideration of the jury.

In an action by an attorney for compensation for professional services upon a *quantum meruit*, it is not competent for the plaintiff to offer evidence as to what sum was paid to, or demanded by, any attorney in particular, for like services. The usual and customary compensation for services of the like kind, is admissible evidence; but what was paid to any particular individual, standing *per se*, is inadmissible. *Per Prince George's county court—affirmed by a division of this court.*

The common law of *England,* in relation to fees of counsellors at law, is inapplicable to the *State of Maryland.* In a *quantum meruit,* they may recover for professional services rendered.

A defendant below, cannot assign for error (when appellant,) the results of any of his own modifications or additions to the prayer of the plaintiff below. If there be any error for which a judgment in this case should be reversed, it must be found in the addition made by the plaintiff to the instruction as modified and amended at the defendant's instance.

It is error in the county court to instruct a jury absolutely, though they might have been authorised to grant the same instruction hypothetically.

Where the proof is wholly oral, of the credit due to which the jury only are competent to decide, the court should not decide the matter of fact, and so withdraw from the jury the credibility of the witnesses and the truth of their statements.

APPEAL from *Prince George's* County Court.

This was an action of *Assumpsit,* commenced by the appellee against the appellant, on the 7th February 1837, to recover the value of certain professional services as an attorney and counsellor at law, rendered by the appellee to the testator of the appellant, and at his special instance and request.

At October term 1837, the defendant pleaded non-assumpsit, on which issue was joined.

At the trial of the cause, the plaintiff offered in evidence the proceedings under a commission which issued on the 17th October 1838, which was rejected by the county court. The plaintiff excepted, but as the appeal was only taken by the defendant, that exception was not reviewed by this court.

1st Exception. At the trial of this cause, the plaintiff to maintain the issue on his part, offered to read to the jury the depositions taken under the following commission, which issued on the 23rd July 1839, and returned on the 6th April 1840, which is as follows:

Prince George's County, *Sct. The State of Maryland to Joseph H. Bradley, Philip R. Fendall, James M. Carlisle and James Hoban, of the District of Columbia, gentlemen, greeting:* Be it known that you are appointed commissioners to examine evidences in a cause depending in *Prince George's* county court, between *Richard S. Coxe*, plaintiff, and *Charles B. Calvert*, executor of *George Calvert*, defendant. Therefore you are requested, (having first taken the oath hereunto annexed, and also administered the annexed oath to the person whom you shall appoint as clerk to attend the execution of this commission,) that at such time and place as to you shall seem convenient, you cause to come before you, all such evidences as shall be made or produced to you, either by the plaintiff or defendant; and that you examine them upon their corporal oaths, &c.; and that you cause notice to be given to the parties or their attorneys, of the execution of this commission, before you execute the same; and, &c.

*Interrogatories to be administered to Thomas Swann, Esq., a witness to be examined on the part of the plaintiff.*

1st. Do you know the above named parties, or either, and which of them.

2nd. Do you know whether the said plaintiff was employed as counsel by *George Calvert* in a certain case touching the validity of a supposed will of the late *Thomas Cramphin*, de-

13    v.1

ceased, which was contested by a certain *Mrs. Davis*, and during his life time by her husband.

3rd. In what court or courts was such suit pending.

4th. State as fully as practicable the nature, extent and value of the services rendered by said plaintiff to defendant's testator.

5th. How frequently, and for what length of time was said plaintiff so occupied and employed as counsel in said controversy at *Rockville* and *Annapolis*, in the orphans court, county court and Court of Appeals.

6th. In what manner was said controversy finally settled.

7th. State any thing further material to the plaintiff's case.

THOMAS G. PRATT, *for R. S. Coxe.*

True copy—Test, AQUILLA BEALL, *Clk.*

WASHINGTON, 11*th November*, 1839.

CHARLES B. CALVERT, Esq., *Executor of George Calvert, deceased. Sir,*—Notice is hereby given to you, that on Saturday next, the 16th inst., between the hours of twelve at noon and six in the afternoon, at the dwelling house of *Thomas Swann, esquire*, near the town of *Leesburg*, in the county of *Loudoun*, in the State of *Virginia*, we shall proceed, by virtue of a commission from the State of *Maryland*, to us directed, to take the depositions of the said *Thomas Swann*, and such other witnesses as, &c., &c. And that on Monday next, the 18th inst., between the hours of ten in the morning and six in the afternoon, at the office of *Joseph H. Bradley*, one of us, in the city of *Washington*, in the *District of Columbia*, we shall proceed, by virtue of the commission aforesaid, to take the depositions of, &c., and that at the said several times and places you may attend, if you think proper.

Yours, respectfully,     JOS. H. BRADLEY, &c.

The plaintiff acknowledged service of the notice on him 12th November 1839, and there was proof of service of same on the defendant, by leaving it at his residence on the 11th November 1839, by an affidavit made before the commissioners.

At the execution of a commission, issued, &c., directed to *Messrs. Joseph H. Bradley*, &c., empowering them to examine

evidence in a cause, &c., we the said *Joseph H. Bradley*, &c., in the said commission named, having met on the 16th day of November 1839, at the house of *Thomas Swann, esquire*, in the county of *Loudoun* and State of *Virginia*, pursuant to notice, and taken the oath to the said commission annexed, proceeded to take the deposition of *Thomas Swann, esquire*, which is reduced to writing, and transcribed by *Robert Ould, junior*, who was appointed clerk by the said commissioners, and took the oath prescribed for such clerk, and to the said commission annexed.

The said *Thomas Swann*, of lawful age, being first sworn, &c., to the *first* interrogatory—He knows both.

To the *second* he answers—Yes.

To the *third* he answers,—The suit was first pending in the orphans court of *Montgomery county, Maryland;* the issues were tried in the county court of said county, and the cause was afterwards carried to the Court of Appeals of *Maryland*.

To the *fourth, fifth, sixth* and *seventh*, he answers,—Some-time previous to the first trial of the issues in *Montgomery* court, upon *Mr. Cramphin's* will, I met the late *Mr. George Calvert* in one of the streets in *Washington*, and he stopped me and told me he wished to engage me in the contest which was about to take place in relation to this will; I said to *Mr. Calvert*, that I had understood that he had already engaged counsel in that case, and that I did not wish to interfere with my brethren in their professional engagements; he said that he had fixed upon or first engaged *Mr. Key* and *Mr. Forrest*, to act as his counsel, but that a misunderstanding had taken place between them, and that he had determined to have nothing more to say to them. I asked if nothing could restore the breach between them, and as they knew more about the case than a stranger, it would be better to adhere to them if possible. He told me he had made up his mind to have nothing more to say to them, and that if he could not get counsel here, he had decided to go to *Baltimore* and get counsel there. I then said, that if that was the case I could see no objection

in undertaking the case for him, and that I would think about it, and let him know when I saw him again. I asked *Mr. Calvert*, what sort of a case it was; whether there would be any difficulty in establishing the will; he said that he knew of no difficulty in the case, and I was under the impression that the trial would be a short one. *Mr. Calvert* asked me, if I should consider a thousand dollars a sufficient compensation to try this case before the jury, and I said it would, being persuaded from his representation at the time, that the labor would not exceed a week. *Mr. Calvert* and myself parted, and before I saw him again, I saw *Mr. Dunlop* of *Georgetown*, who I understood was to have been engaged with *Mr. Key*, in the contest respecting this will. I asked *Mr. Dunlop* if their engagement with *Mr. Calvert* had been broken off; he told me it had. When I saw *Mr. Calvert* again, I told him I would undertake his cause for him, and would argue his issues before the jury for the thousand dollars which he had proposed to give. In this engagement I did not consider myself bound to go beyond the jury trial, and expressed this opinion repeatedly after the engagement. *Mr. Calvert* mentioned to me, that assistant counsel would be necessary, and asked me how I should like *Mr. Coxe;* I told him very well, and he promised that he should be engaged. I am not certain, but it is probable he requested me to engage him. I well recollect applying to *Mr. Coxe*, and stating to him the nature of my engagements, and assuring him, that he should be put on the same footing with myself. He consented to join me upon these terms. In this first engagement, I considered the fee of one thousand dollars as a certain fee, to be paid at all events. The impression then was, that the orphans court would allow it, whether we should succeed or not, but at all events we were to have it. Before however we entered upon the trial, we made a change in our contract; we agreed to take a contingent fee of two thousand dollars, in the event of success, and in case we did not succeed, to take our chance of getting what we could from the orphans court. I had little expectation from the orphans court, and always looked to our success

in the verdict as the only chance of payment. We did succeed in this verdict, after a most troublesome trial of about twenty days, and *Mr. Calvert* paid us over two thousand dollars a piece. And so the engagement, as I certainly supposed, was at an end. At the time that this verdict was obtained, there was no law, as I understood, that would authorise the taking of this case to the Court of Appeals; but some short time afterwards a law was passed authorising an appeal, and the case was removed to the Court of Appeals under this new law. When it was about to come on in that court, *Mr. Calvert* sent me a message, requesting that I would attend the trial in the Court of Appeals. I felt some reluctance about going, never having been in the *Maryland* Court of Appeals before. I determined however to go, and left my farm in *Loudoun,* and went to *Annapolis* and made the argument in the case. *Mr. Coxe* was there also and assisted in the argument, and so did *R. Johnson, esquire.* *Mr. Calvert* was there also. I think we spent about a week in the argument. Nothing was said about compensation in this trial. *Mr. Coxe* wished an understanding about it, and I begged him not to press it, saying that *Mr. Calvert* would do what was right. The Court of Appeals set aside the verdict, and the cause was sent back for another jury trial. This decision opened a new course of labor, not in the contemplation of any of us, and not provided for in our original agreement. When the cause came back for another jury trial, we were all aware of the trouble which would attend it. *Mr. Calvert* saw and conversed with me about the further trial of the cause; he said to me, "you must see it out; I have made considerable advancements out of my own personal funds to carry on this controversy, and can go no further, but go through the business, and I will do you justice, liberal justice. If I get possession of the estate, you shall have no cause to complain." I thought he was right in this course, and agreed to go through the business, and to let my compensation depend upon his getting possession of the estate. *Mr. Coxe* asked me several times, what he was to have for his further services, and I informed

him what had passed between *Mr. Calvert* and myself, and expressed my wish, that he should fall into this arrangement, and he agreed so to do, and we went through this business with this understanding.  We had another jury trial of about twenty days, in which the jury did not agree, and we attended another after that of nearly twenty days; besides this, we repeatedly attended the court to press the trial, and prevent the further continuance of the case.   In the course of the last trial, *Mr. Calvert* compromised the case, mostly through the agency of *Judge Kilgour*.   I was opposed to the terms, thinking the sum which *Mr. Calvert* had agreed to pay too high; but as slaves then were very high, and there was always a doubt about the jury's verdict, I acquiesced in the arrangement of compromise, and *Mr. Calvert* got possession of the estate.   *Mrs. Davis* executed a deed to carry this compromise into effect, and in that deed provision was made to re-imburse to *Mr. Calvert* the money which he had advanced, and for what further moneys he might advance on account of this estate.   This provision in the deed was made, among other things, to cover any further compensation that he might make to his counsel for their further services.   When this business was ended, *Mr. Coxe* claimed his further compensation.   I told him *Mr. Calvert* was a particularly tempered man, and perhaps if I dunned him he might take offence, and that I expected he would apply to me, and as soon as he did I would let him know.   *Mr. Calvert* did not apply, and believing that he did not mean to do so, I mentioned the subject to him.  He said he would never advance another cent without the sanction of the court, but referred me to his son *Charles*, who would act for him in the matter.   I accordingly applied to his son, and he repeated what his father had said.  I told him we should be content to take what the court should say was reasonable, but afterwards, perhaps the next day, he said his father was not content to leave it to the court.   I then proposed to make a friendly case, and to leave it to the jury; he said his father would not be ready to try it at the first term.   I told him he could take further time if he wished, upon which

he said he could see no objection to this, and that he would see his father and let me know. In a day or two after I saw him, and he told me his father would not consent to this, and I think on the same day I saw *Mr. Calvert*, and he said "he would not consent to leave it to the court or jury." I asked him what then was to be done. Upon the footing which we had stood, and the respect I had for him, I could not send a sheriff after him; he said, &c. The two thousand dollars herein mentioned, were paid to me, and the same sum to *Mr. Coxe*, for services rendered and past at the time of such payment, and were not in any sense advanced or in consideration of services to be rendered, but wholly in fulfilment of the original agreement, which had been satisfied on our part, before the first verdict in the cause. As to the value of the services, I always supposed that as our labors upon the subsequent jury trials were much greater than those performed by us upon the first trial and previous thereto; and as *Mr. Calvert* himself had estimated the value of such services, up to and inclusive of said trial at $2000, we were justly entitled to a similar sum for said subsequent services, and likewise to an additional compensation of $500 each, for the argument in the Court of Appeals. I have been in the profession of the law upwards of forty years; I have never been considered immoderate in my charges, and my brethren have frequently complained of me, as being too low in my charges. From the amount in controversy in this case, the number of days spent by us in prosecuting it, and the peculiar character of the cause itself, I consider $2,500 each, as a very moderate fee for the services rendered by us subsequent to the first verdict. *Mr. Coxe* often said, that he expected *Mr. Calvert* would give us more than that sum, but I told him I doubted it; yet, that to the extent of $2,500 each, I had no doubt he would go. *Mr. Calvert*, in stating to us in advance, the nature and extent of the services required of us, always much depreciated them, telling us that it was a plain case, and would require no great exertion. We found it however very much the contrary, and one of the most laborious causes that I had ever tried. And further the said deponent saith not.

And we, the said commissioners, do further certify, that pursuant to the said notice to the parties to the said suit, which is hereunto annexed, we did, on Monday the 18th day of November, 1839, meet between the hours of ten in the morning and six in the afternoon of that day, at the office of *Joseph H. Bradley*, one of us, in the city of *Washington*, in the *District of Columbia*, and that some one or more of us was in the said office from the said hour of ten o'clock in the morning until six in the afternoon of that day, and that no other witness was produced by either of the parties before us. And we do herewith return the said commission, interrogatories, notice and depositions to the honorable the judges of the said court, under our hands and seals.

Jos. H. Bradley, &c. &c., *Commissioners.*

The plaintiff then gave in evidence the following proceedings in this cause upon his motion for a commission, viz:

Richard S. Coxe vs. Charles B. Calvert, Ex'r of Geo. Calvert. In *Prince George's* county court.

*Commissioners in the Case. Joseph H. Bradley, Philip R. Fendall, James M. Carlisle* and *James Hoban,* of the *District of Columbia.* Let the commission issue as prayed.

*May* 27, 1839.                                   C. Dorsey.

Interrogatories to be administered to *Thomas Swann, esquire,* a witness to be examined on the part of the plaintiff.

Then followed the interrogatories Nos. 1 to 7, as set forth under the commission, which were signed by the plaintiff's counsel and dated 27th May 1839.

To the reading of this evidence the defendant by his counsel objected.

1st. Because the said commission issued irregularly.

2nd. Because the commissioners therein named had no right to execute the same in the State of *Virginia.*

3rd. Because the said commission could not be executed at a private house.

4th. Because the commission did not appear to have been executed at the time and place mentioned in the notice, and

5th. Because the time allowed by the notice to the defendant was too short.

But the court (STEPHEN, C. J., and DORSEY, A. J.,) overruled the said objections and permitted the said deposition to be read to the jury, which was accordingly read; to which opinion of the court, overruling the said objections and permitting the said deposition to be read to the jury, the defendant excepted.

2ND EXCEPTION. After the evidence offered in the preceding exceptions, and which by agreement shall constitute a part of this exception, and after the court had decided that the objections urged by the defendant to the reading of the deposition taken under the commission, which issued on the 23rd of July 1839, were insufficient to exclude it from the jury, the defendant by his counsel, (when the counsel of the plaintiff was about to read the said deposition to the jury,) objected to the following portions of the said deposition:

1st. To that portion of the said deposition which is contained within brackets, commencing with the word "In" and ending with the word "engagement." ["In this engagement I did not consider myself bound to go beyond the jury trial, and expressed this opinion repeatedly after the engagement."]

2nd. To that portion of said deposition on the same page in the brackets, commencing with the word "In" and ending with the word "events." ["In this first engagement I considered the fee of $1,000 as a certain fee, to be paid at all events."]

3rd. To that portion of said deposition on the same page in the brackets, commencing with the word "And" and ending with the word "end." ["And so the engagement, as I certainly supposed, was at an end."]

4th. To that portion of said deposition in the brackets, commencing with the word ["Mr." and ending with the word "right."] ["*Mr. Coxe* wished an understanding about it, but I begged him not to press it, saying that *Mr. Calvert* would do what was right."]

5th. To that portion of said deposition in brackets, commencing with the word "Mr." and ending with the word "understanding." ["*Mr. Coxe* asked me several times what was he to have for his further services, and I informed him what had passed between *Mr. Calvert* and myself, and expressed my wish that he should fall into this arrangement, and he agreed to do so, and we went through the business with this understanding."]

6th. To that portion of the said deposition in the brackets, commencing with the word "And" and ending with the word "services." ["And in that deed provision was made to reimburse to *Mr. Calvert* the money which he had advanced, and for what further moneys he might advance on account of this estate. This provision in the deed was made among other things to cover any further compensation that he might make to his counsel for their further services."]

7th. To that portion of said deposition on the same page in the brackets, which commences with the word "When" and ends with the word "know." ["When this business was ended, *Mr. Coxe* claimed his further compensation. I told him that *Mr. Calvert* was a particular tempered man, and perhaps if I dunned him him he might take offence, and that I expected he would apply to me, and as soon as he did I would let him know."]

8th. To that portion of the said deposition included in the brackets, which commenced with the word "The" and ends with the word "cause." ["The two thousand dollars herein mentioned were paid to me, and the same sum to *Mr. Coxe*, for services rendered and past at the time of such payment, and were not in any sense advanced or in consideration of services to be rendered, but wholly in fulfilment of the original agreement, which had been satisfied on our part before the first verdict in the cause."]

9th. To that portion of the said deposition in the brackets, which commences with the word "I" and ends with the word "charges." ["I have been in the profession of the law upwards of forty years; I have never been considered immod-

erate in my charges, and my brethren have frequently com-plained of me as being too low in my charges."]

10th. To that portion of the same deposition which com-mences with the word "Mr." and ends with the word "go." {"*Mr. Coxe* often said that he expected *Mr. Calvert* would give us more than that sum, but I told him I doubted it, yet that to the extent of $2,500 I had no doubt he would go."]

The court sustained all the objections made by the counsel of the defendant to the said deposition, except to that portion of the latter clause of the first part excepted to on the 5th page, which in the clause commences with the word "this" and ends with the word "services." See the 6th objection above. That portion of the said deposition the court (STE-PHEN, C. J. and DORSEY, A. J.) decided to be admissible, and suffered the same to be read to the jury. The plaintiff excepted to so much of the opinion of the court as excluded the other portions of the deposition objected to.

The counsel of the defendant excepted to that part of the court's opinion under which the aforesaid part of the said de-position, commencing with "this" and ending with "services" was admitted.

3RD EXCEPTION. In the trial of this cause, and in addition to the testimony before offered, and which it is agreed shall be considered a part of this exception, the plaintiff to maintain the issue joined on his part, offered proof, that in a former trial of this case, a certain *Benjamin S. Forrest* was examined as a witness, and that the said *Forrest* is since dead; thereupon, the plaintiff offered to prove by a competent witness, who was present at the time of the trial, what facts were proved by the said *Forrest* as a witness; and during his examination in the cause, the defendant by his counsel objected to the admis-sibility of said proof, but the court admitted it, and suffered the evidence to be given to the jury; to which opinion of the county court, admitting the said evidence, the defendant excepted.

4TH EXCEPTION. At the trial of this cause, after the evidence contained in all the preceding exceptions had gone to the jury, which by agreement shall constitute a part of this exception, the defendant, to maintain the issue joined on his part, proved to the jury by a competent witness, that he the witness, as the agent of the defendant's testator, on the 12th December 1832, shortly after the first trial in *Montgomery* county court, of the issues growing out of the will of *Thomas Cramphin,* deceased, and which were sent by the orphans court of the county to be tried in the said county court, which trial resulted in a verdict in favor of the will, paid the sum of $2,000 to the plaintiff; that on the day the money was so paid, *Thomas Swann, Esq.,* and *Z. C. Lee, Esq.,* who were also employed as counsel for said *Calvert,* (together with the plaintiff,) called at the office of the witness, when the said *Swann,* after an examination of the law upon the subject, said the case affecting the validity of said will was finally settled by the said verdict; that the defendant's intestate was also present, and that thereupon after the expression of the said opinion by the said *Swann,* he the said *Swann* and the said *Lee* asked the said *Calvert* for the fees which had been respectively promised to be paid to them, telling him he would soon be able to get it out of the estate of said *Cramphin;* that the said fees were accordingly paid to them, and on the same day the sum of $2,000 as aforesaid was paid to the plaintiff as his fee. And the defendant then read in that connexion a letter from the plaintiff to the said *Swann,* dated the 16th February 1836, which is as follows, to wit:

*Dear Sir,*—On examining your draft of a letter to *Mr. Calvert,* it occurs to me to make a suggestion or two as matters of fact. In the first place the entire arrangement was made between *Mr. Calvert* and yourself. I was confined to my bed by a severe fit of illness, and unable to enter into the merits of the controversy, or to estimate the amount of compensation, and equally unable to investigate the question, which I deemed a preliminary one, viz: whether the circumstances which had led to the separation of *Mr. Calvert* from his former counsel were such as to permit us to assume their position without a viola-

of professional courtesy. This situation induced me to repose the whole matter to you.

In consequence of this arrangement I have had no personal understanding with *Mr. Calvert* on the subject. Your first information was that *Mr. C.* would pay us $1,000 each, for the trial of the issues, without any contingency, it being the opinion of all of us, that it was *Mr. Calvert's* right and duty to defend the case, and that his expenses would be allowed him by the orphans court out of the estate, whatever might be the final result. In this state of things, *Mr. Lee* and myself attended at *Montgomery* for the purpose of having the issues amended. Before I was able myself to attend, they had been prepared. We did not succeed, and our proposed amendments were disallowed. Between this time and the trial we learned that the orphans court would not allow *Mr. C.* his expenses if the will should be set aside. And you then apprised me that *Mr. Calvert*, fearful of committing himself personally, had suggested a change in the terms of our arrangement, and preferred giving us $2,000 in case we succeeded, to $1,000 absolutely. Concurring with him in his views, we both acceded to this modification of the contract. We tried the issues, succeeded, and the fee was paid as had been agreed. At this time every one believed the cause was terminated. There was no act of the legislature allowing an appeal, and none could be taken. During that winter a law was obtained authorising an appeal to be taken, and the cause was carried to the Court of Appeals. We attended and argued the cause without anything passing between *Mr. Calvert* and myself personally on the subject of compensation, but with a distinct understanding on your part and mine that we were to be paid, and I had made up my mind, and I believe you also, that we would endeavor to obtain an allowance from the funds of the estate to re-imburse *Mr. Calvert*. The same thing occurred at the several terms when we were at *Montgomery* to try the issues; three or four times I believe.

When the compromise was arranged, the clause providing for the re-imbursement of moneys already and thereafter to

Calvert *vs.* Coxe.—1843.

be paid was introduced to protect *Mr. C.* from every difficulty, and you may remember the particular phraseology I employed in my draft, leaving *Mr. C.* free to exercise his own discretion on the subject.

My position in the cause prevented me from making any arrangement with *Mr. C.*, considering myself as having reposed that in your hands, fully satisfied to confirm any arrangement you might make; but you always stated that we should be fully and liberally compensated if *Mr. C.* should succeed; and if he failed we would endeavor to obtain remuneration for him and compensation to ourselves through the orphans court. If I had entertained any difficulty on the subject it would have been removed by a remark which *Mr. C.* made in my presence, that his objection to paying his former counsel did not arise from any question as to the amount to be paid to such of them as he had wished to be employed, but there were too many of them, some whom he did not want. This I considered as a pledge that we should each receive for our services in the will cause, at least as much as the counsel were each to receive under that arrangement.

In reference to the other matters; the suit against *Mr. C.* by his former counsel; the claim of *Forrest;* the attempt to revoke the letters of administration, I considered them as wholly independent of this original understanding, and to be the subject of distinct charge.

The foregoing may suggest some views of the matter worthy your attention. Very truly yours,

*Feb.* 16*th*, 1836. RICH'D S. COXE.

P. S. I may as well mention, that the views I had taken of the subject were confirmed by every conversation with *Caroline* and her children, all of whom professed themselves willing and desirous that we should be paid far beyond the amount asked by the former counsel, and who, I have no doubt, would now approve of such a course.

*Thomas Swann.* R. S. C.

And he further proved, that the plaintiff had told the witness that the said *Swann* had made the contract for the fee,

and had authority from him the plaintiff for that purpose. And the defendant further proved by the said witness, that he had heard the said *Swann* say that the original contract made by him with the said *Calvert*, upon the subject of fees to be paid him and the said plaintiff, was that they were each to receive a certain fee of $1,000 each; that this contract was subsequently changed, and instead of the said certain fee, they were to have each the sum of $2,000, in the event of their succeeding in obtaining a verdict in favor of the will; and upon the defendant's testator, who was named as executor and trustee in said will, getting thereby the possession of the estate of the said testator, that the said sum of $2,000 to the said *Swann* and the plaintiff, was to be paid contingently upon the said defendant's testator getting possession of the estate of the said *Cramphin*, and to be paid out of the estate.

The defendant then prayed the court to give the following instructions to the jury:

1st. Upon the evidence, the defendant by his counsel prayed the court to instruct the jury, that if the jury shall find that the compensation claimed by the plaintiff of the defendant was according to the agreement of the parties, to be paid out of the estate of the said *Thomas Cramphin*, in the hands of the said *George Calvert*; if the jury shall find that such agreement was made, then the plaintiff is not entitled to recover the same from the present defendant, the personal representative of the said *George Calvert*, and the verdict of the jury must be for the defendant.

2nd. If the jury find from the evidence that the sum of two thousand dollars, which was paid to the plaintiff on the 12th December 1832; if the jury find it was paid, was according to the contract between the parties to be paid upon the contingency of the final decision of the cause in favor of the will of *Thomas Cramphin*, then the plaintiff was entitled to no additional compensation, and the verdict of the jury must be for the defendant.

But the court, (STEPHEN, C. J., KEY and DORSEY, A. J.,) refused to give the instructions prayed by the defendant's counsel, and instructed the jury as follows:

If the jury find from the evidence that the sum of two thousand dollars which was paid to the plaintiff; if the jury find it was paid, was according to the contract between the parties, to be paid upon a finding of the issues by the jury in favor of the establishment of the will in *Montgomery* county court, and that such issues were found by the jury in favor of the will, either of their own accord and free will, or by direction of the parties under a compromise, after the cause had been carried to the Court of Appeals and sent back for a new trial under a *procedendo*, that then the defendant's intestate was personally bound to pay the stipulated contingent fee of two thousand dollars, and such additional compensation as the jury may find the plaintiff's professional services were worth for trying and conducting the case in the Court of Appeals.

If the jury shall find from the evidence that the compensation claimed by the plaintiff from the defendant was to be paid in the event of the jury finding a verdict upon the issues in favor of the establishment of the will, in which the defendant's intestate was appointed executor, and that the verdict was found by the jury in favor of the will, either of their own free will and accord, or by the direction of the parties under a compromise, that then the defendant's intestate was personally bound to make the compensation stipulated, and the defendant is answerable for the same, if it has not been paid.

To the giving of which instructions, and to the refusal of the court to give the instructions as prayed by the defendant's counsel, the defendant excepted.

5TH EXCEPTION. After the evidence in the preceding exceptions had gone to the jury, and which it is agreed shall form a part of this exception, the defendant, for the purpose of enabling the jury to estimate the value of the plaintiff's services for the argument of the case affecting the validity of the will of *Thomas Cramphin* in the Court of Appeals, and for the purpose of showing that the jury might not allow as much therefor upon the *quantum meruit*, as the estimate placed thereupon by other witnesses examined in the cause on the part of the plaintiff, offered to prove by a competent witness, that

*Reverdy Johnson, Esq.*, an attorney of the Court of Appeals, argued the same case there, together with and as an associate of the plaintiff, and then was about to prove by the same witness the amount of the fee which the said *R. Johnson* received from the defendant's testator for the said argument in the Court of Appeals, as a circumstance to assist the jury in fixing the amount of compensation to be allowed the plaintiff for the same service. But upon an objection made to the said proof by the plaintiff's counsel, the court would not suffer it to go to the jury; and to the refusal of the court to suffer the said evidence to go to the jury, the defendant excepted.

6TH EXCEPTION. Upon the testimony stated in the several bills of exceptions, and which it is agreed shall be a part of this exception, the defendant by his counsel prayed the court to instruct the jury, that if the jury should be of opinion from the evidence, that by the terms of the contract between the plaintiff and defendant, the plaintiff was bound to prosecute to a successful issue the controversy then pending in the orphans court of *Montgomery* county, and has been paid the two thousand dollars, the contingent fee, then the plaintiff is not entitled to claim any further compensation for his services proved to have been rendered as aforesaid in the Court of Appeals, but the court refused to give the instruction asked as aforesaid; to which refusal the defendant excepted.

7TH EXCEPTION. In the further progress of this cause, and after the evidence in the previous exceptions had gone to the jury, which by agreement shall make a part of this exception, the plaintiff further to maintain the issues joined on his part, proved by *Z. C. Lee, Esq.*, that he was one of the counsel employed by the testator of the defendant, to defend the will of the late *Thomas Cramphin.* That according to the original contract between the said defendant's intestate and his counsel, consisting of himself, *Mr. Swann* and the plaintiff, the said *Swann* and the plaintiff were each to receive a certain fee of $1,000, and the witness a similar fee of $750. That this contract was subsequently changed, and that by the substituted contract, *Mr. Swann* and the plaintiff was each to receive

$2,000, contingent upon the event of the finding of a verdict by a jury in favor of the will, and that the witness was to receive a fee of $1,500, contingent upon the same event.

And the plaintiff further proved that at the November term of the *Montgomery* county court, a jury of that county found a verdict in favor of the will; that there being at that time no law which authorised an appeal to the Court of Appeals, by by which the opinions pronounced by the county court in the progress of the said trial, could be revised, although exceptions were taken by the parties to many of the opinions of the court; that immediately upon the rendition of the said verdict, a motion was made by the parties who contested the will for a new trial, which motion was not disposed of during the then term of the county court, which closed the day after the verdict, and which was not disposed of when the Act of Assembly of 1832, ch. 208, was passed by the legislature.

The plaintiff then further offered evidence, that though the motion for a new trial was not disposed of when the said law passed, yet according to the recollection of the witness, it was disposed of and overruled by the county court before the case was carried to the Court of Appeals. And it was further proved, that the case was carried to the Court of Appeals, and the judgment of the county court reversed by the Court of Appeals at June term 1833.

And thereupon the following instructions were prayed by the counsel of the respective parties:

The plaintiff asked the following instructions to the jury:

If the jury shall believe from the evidence that the contract as existing between the plaintiff and the defendant's testator, in November and December 1832, was that the said plaintiff was to receive from the said testator the sum of two thousand dollars, as a fee in case the verdict of the jury should be in favor of the will on the issues then pending in *Montgomery* county court, and that the verdict of the jury was in fact in favor of the will on said issues, and the said sum of $2,000 was then paid to the plaintiff by the defendant's testator, in fulfilment and execution of said contract, and that said plaintiff subsequently

rendered other and further services for said defendant's testator, at his instance and request, for which he has not been compensated, then the jury may find for the plaintiff such amount as they shall believe from the evidence the plaintiff reasonably deserved to have for such compensation.

The defendant by his counsel objected to the court's granting the said instructions, but prayed the court, in case they should grant the same, to add thereto the following modification:

That if the jury should find from the evidence, that the contract between the plaintiff and the testator of the defendant, upon which the sum of $2,000 was to be paid, only entitled the plaintiff to receive the said sum upon obtaining such a verdict in favor of the will, as would procure its admission to probate in the orphans court, then the plaintiff was not entitled to the said sum of $2,000, until such a verdict was rendered; and the plaintiff in that event can only recover such reasonable compensation as the jury may think he was entitled to, for the argument of the case in the Court of Appeals.

To this modification the plaintiff moved the following addition, but that as the law stood, at the time of the making of the said contract and its execution by the parties respectively, no appeal or writ of error was allowed to the Court of Appeals, and that the law subsequently passed in 1832, gave for the first time a right of appeal, under and in consequence of which, the said verdict and judgment thereon was reversed and set aside by the Court of Appeals, and that independently of said law, said verdict was a final termination of said issues, then the contract between the said plaintiff and the defendant's testator, is to be expounded with reference to the law as it stood when it was made by the parties, and the services imposed on and performed by the plaintiff in consequence of said law, and subsequent to its passage, at the instance and request of defendant's testator, are not within the contract and provided for by it.

To which the defendant moved this further addition, "that if the jury find, that at the time the sum of $2,000 was paid the plaintiff, the motion for a new trial had not been disposed of, then the verdict referred to was not a final verdict."

And to this, the plaintiff moved this further addition, that the said verdict became a final verdict afterwards, and before the appeal was taken to the Court of Appeals.

The court gave these instructions, with their several modifications and additions; and to the giving of each and all of them, with their several modifications and additions, the defendant excepted.

The jury found a verdict for the plaintiff in the sum of $2,000, and the defendant appealed to this court.

The cause was argued before ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By J. JOHNSON and A. C. MAGRUDER for the appellant, and By REVERDY JOHNSON and T. G. PRATT for the appellee.

ARCHER, J., delivered the opinion of this court.

I am directed by the court to say that they approve of the opinion expressed by *Judge Dorsey* on all the exceptions in this case, except on the *third* and *fifth* exceptions of the appellant.

I am further directed by a majority of the court on the third exception, to say that they think the court below were right in the opinion by them expressed in this exception.

This court has, heretofore decided, that facts proved on a former trial by a deceased witness are admissible on a second trial of the same case. They would only be rejected on the presumption, that facts were proven on the first trial which were inadmissible as evidence. This we think we cannot intend; but the reasonable presumption is, that such facts were alone proved as were admissible, and it was proper the court should act on this presumption, upon the offer of the evidence, until the contrary appeared.

On the *fifth* exception the court are divided. Those of us who maintain that the evidence offered as to what sum was paid to *Mr. Johnson* was inadmissible, think that what was paid to or demanded by one attorney, was not evidence in the cause. We cannot judicially know the standing of any one member of the bar, or the circumstances under which he was paid, or demanded a given sum for his services. What is the

usual and customary compensation for services of the like kind is admissible testimony, but what was paid to any particular individual, standing *per se*, is in our opinion inadmissible.

DORSEY, J., delivered the following opinion:

Differing in opinion with a majority of the court on some of the bills of exceptions, I proceed to state my own views of this case.

Whether the court below erred or not, in rejecting the testimony taken under the first commission issued in this cause, is a question not before us for decision, on the present appeal.

Our first inquiry is, was there error in the county court's admitting the testimony under the second commission, to go to the jury? For its rejection various reasons have been assigned; as well in respect to the time and manner of its issue, as of its execution. It is asserted in the argument for the appellant that it was ordered on the same day that it was applied for; and that no opportunity was given to the appellant to name and strike commissioners. If this assertion be true, it does not satisfactorily appear to me by the record before us. The proof of what transpired in the court below in relation to the issuing of the second commission is not presented to us, as it is in relation to the first. In regard to the latter, it was proved by competent testimony, that it was applied for by the plaintiff on the 17th of October, 1838, and that on the same day it was ordered to four commissioners named by the plaintiff. But as to the second commission; of the day on which it was applied for; of the number of days which intervened between such application and the naming of commissioners by the plaintiff; and the order for the issuing of the commission, the record furnishes us no definite information. All that we can there learn upon the subject is, that *Prince George's* county court sat on the first Monday of April, 1839. That the return to the first commission was made to it at that term; and that a jury was then sworn, and a juror withdrawn; and "whereupon" it was "ordered by the court, on motion of the plaintiff by his counsel, that commission issue to take depo-

Calvert *vs.* Coxe.—1843.

sitions in this cause, directed to *Joseph H. Bradley, Philip R.* *Fendall, James M. Carlisle and James Hoban, Esquires, of the* *District of Columbia,* which said commission accordingly issues to the said commissioners, as ordered by the court." Thereupon, &c., the cause was continued. Whether these commissioners were exclusively named by the appellee, or were constituted by both parties having exercised the right of striking, the record gives no means of ascertaining. Nor does the order of the judge upon the subject, furnish any definitive evidence upon this question. After giving the titling of the cause, it is in these words: "Commissioners in the case, *Joseph H. Bradley, Philip R. Fendall, James M. Carlisle* and *James Hoban,* of the *District of Columbia.* Let the commission issue as prayed, May 27th 1839." From the length of time which elapsed between the commencement of the term and the date of the judge's order, in the absence of all proof to the contrary, it is fair to presume either that the appellant did name and strike commissioners, or that after reasonable notice he failed to do so, and the phraseology of the order rather repels than sanctions the presumption, that, as soon as the motion was made, the commission was directed to issue to the commissioners named by the appellee. Had such been the action of the court, their order, instead of assuming the shape it did, would have been couched in language like the following: "on motion of the plaintiff ordered, that commission issue to the commissioners by him named." The motion of a suitor seeking a commission to take testimony, is not that a commission issue for that purpose to A, B, C and D, but that a commission issue to take testimony; naming the place to which he wishes it to be addressed. Whereupon the court gives the usual order for naming and striking commissioners. How long this motion was made before the court's order of the 27th of May, does not appear; but in the absence of all proof to the contrary, judicial courtesy requires us to presume, that in issuing this commission the county court discharged its duty according to its rules and practice regulating the exercise of such authority. And in this pre-

sumption we are fortified by the fact, that no proof was offered of the non-conformity of the court in this respect, as was attempted to be shown as regards the first commission. Neither does it appear that at the trial below it was made a distinct ground of objection to the testimony under the second commission, as it was to the first; that "the said commission issued to commissioners named exclusively by the plaintiff, without allowing time to the defendant to name any on his part." As far as this objection is concerned, therefore, I think the county court did not err in permitting the testimony under the second commission to go to the jury.

The next objection to the evidence in question is, that it was executed in the *State of Virginia*, in which the commissioners had no authority to act. And in support of this objection the cases of *Bondereau and al vs. Montgomery and al*, 4 *Wash. C. C. R.* 186, and *Lessee of Rhoades and Snyder vs. Selin and al* 4 *Wash. C. C. R.* 715, have been relied on. But those cases are not analagous to that now before this court. There by the terms of the commissions they were to be executed at designated places; and having been executed elsewhere, they were suppressed by the court. In the commission under consideration, there is no designation of the place of its execution. The power of selecting it is confided to the sound discretion of the commissioners, and of its exercise on this occasion, the appellant has no right to complain. That the commission was executed at a private house, detracts nothing from its validity. And in my opinion it does sufficiently appear to have been executed at the time and place mentioned in the notice. In answer to the fifth objection, that "the time allowed by the notice was too short," it has been urged, that this being a foreign commission, no notice to the parties of the time and place of its execution was requisite. And in support of this doctrine, the cases of *Owings vs. Norwood*, 2 *Harr. & John.* 99, and *Law vs. Scott*, 5 *H. & J.* 438, have been cited; and I think fully sustain it. In the former of these cases the court decided that "in executing foreign commissions, notice is not necessary; but time should be given, that the opposite party might

exhibit cross interrogatories:" and in the latter it is fully settled that, in executing foreign commissions, no notice of the time and place of so doing need be given to the parties to the suit. All the notice required is, that of the interrogatories sent out with the commisssion; actual or constructive notice should be given to the opposite party, in time for him to exhibit cross interrogatories before the transmission of the commission. It is true that it is not perfectly obvious that the opinion of the learned judge who decided the case of *Boreing vs. Singery*, is in perfect harmony with the above recited extract from the opinion of the same judge, delivered in the case of *Owings vs. Norwood*. In *Boreing vs. Singery*, the defendant offered in evidence a commission issued at his instance, the return to which, "after setting forth the meeting of the commissioners, and their having taken the deposition of a witness in answer to certain interrogatories," concludes by the commissioners certifying that "the foregoing interrogatories were taken at the instance of *Joshua Stevenson*, on his asserting that the plaintiff had knowledge of his coming and intention of having this commission executed." In support of this statement made to the commissioners, no evidence was offered, and it would appear from the report of the case that no interrogatories were filed and sent with the commission; nor any notice given the plaintiff of the interrogatories propounded to the witness; nor was time or opportunity afforded him of filing cross interrogatories; nor any notice given him of the time and place of executing the commission. Upon the objection being raised to the admissibility of the deposition taken, on the ground that legal notice had not been given to the plaintiff of the time of executing the commission, the learned judge, above referred to, who delivered the opinion of the court below, said, "this case is not similar to the case of *Norwood vs. Owings*. In that case the commissioners certified that they had given notice; but in this case it does not appear, by the return of the commissioners, that they had given any notice, or that proper notice had been given. The court are of opinion, that the commission and return are not legal evidence." That the

court were right in rejecting the testimony offered, is too obvious to admit of discussion. It was affirmed on appeal to this court. It is true the learned judge was mistaken as to a fact which he stated in reference to the case of *Norwood vs. Owings,* viz: that "the commissioners certified that they had given notice." The return of the commissioners certified no such fact. But in that case the defendant, on whose behalf the commission issued, filed in court his interrogatories, (a copy of which was annexed to the commission,) and ample opportunity was given to the plaintiff to have filed cross interrogatories. In the interpretation given by the counsel of the appellee to the opinion of the learned judge in *Boreing and Singery,* he is perhaps misunderstood. He did not mean, as is imputed to him, to impugn the principle, so distinctly announced by him in the case of *Owings vs. Norwood,* in reference to the execution of foreign commissions; but speaking in reference to the commission before him, where no notice of the interrogatories, or opportunity to exhibit cross interrogatories had been given to the plaintiff; he, in rejecting the testimony, says, "but in this case it does not appear, by the return of the commissioners, that they had given any notice, or that proper notice had been given;" thus it may be inferred, confirming and extending, rather than overruling the doctrine he had so emphatically laid down in *Norwood vs. Owings,* to which he most probably alluded in his alternative reason assigned, "or that proper notice had been given."

In the case before us, however, notice of the time, place, &c., of executing the commission was given by the commissioners to the appellant; and I do not regard the shortness of the time complained of an adequate ground for suppressing the testimony taken under the commission. In the appellant's first exception, therefore, I see no ground for reversing the judgment of the county court, rendered in the case before us.

On the second bill of exceptions, I think the county court erred. Having permitted a witness to state the contents or effect and operation of a written instrument, without producing it, notwithstanding the appellant's objection to the admissibil-

16    v. 1

ity of the testimony. The testimony, thus given, might have had a material influence on the minds of the jury in forming their verdict.

I cannot consent to affirm the act of the county court in admitting, under the circumstances in which it was done, the witness to give evidence of what facts were proved by a certain *Benjamin S. Forrest*, a deceased witness, examined in a former trial of this cause. The testimony being objected to, before the court could determine that it was admissible, it must be satisfied that it was not immaterial and irrelevant to the issue in the cause, of which it was wholly incompetent to judge, without a statement of the facts of which the proof was offered. The objection being overruled, and the evidence admitted without any such statement, I do not see how this court can determine that it was admissible, without knowing what it was. When testimony is objected to, before it can be submitted to the jury, the party offering it, must show its competency, or it must be made appear to the court that it is not immaterial or irrelevant. His obligation to do so, is in nowise changed, by proof of the fact, that it was given in evidence to a jury in a former trial of the same cause between the same parties. Reasons, almost without number, may be assigned, why a party not objecting to incompetent testimony on a first trial, should prefer his objections on the second. His omission or waiver of his rights in a first trial, do not impair or restrain his exertion of them in the second. A principle of striking analogy to that now in question, was decided by the Court of Appeals in the case of *Ragan vs. Gaither*, 11 *Gill & John.* 472, where the judgment of the county court was reversed, because two deeds referred to in the bill of exceptions were not inserted at length, that the court might judge of their legal effect and operation. By admitting the testimony offered to go to the jury, the court in fact decide that the facts offered to be proved, were pertinent and material to the issue, without the semblance of any knowledge of what the facts were.

I see no sufficient ground for the reversal of the judgment of the county court, either for its refusal to give the defendant's

instructions as prayed, or for the giving of the court's instructions as set forth in the defendant's fourth bill of exceptions. Notwithstanding the facts put to the finding of the jury by the appellant's first instruction in this bill of exceptions, the jury were not bound to find for the appellant. If the appellant's intestate did contract with the appellee to pay him for his services out of the estate of *Thomas Cramphin*, in the intestate's hands, and failed to do so, his contract was broken; he was personally bound for its performance, and the present action, for the breach thereof, might well be sustained against the appellant, his personal representative. So also as to the second instruction prayed for by the appellant; although the $2,000 paid to the appellee, was, according to the contract between the parties, to have been paid upon the contingency of the final decision of the cause in favor of the will of *Thomas Cramphin*, yet the jury were not thereby bound to find a verdict for the defendant, because there was other evidence before the jury legally sufficient to warrant them in finding that, by an additional or subsequent agreement between the parties, the appellant's intestate promised to pay to the appellee a further compensation for the services rendered, or a portion thereof. With the two instructions given by the court to the jury in this exception, I see nothing of which the appellant has such ground of complaint as would require of this court the reversal of the judgment.

I cannot concur with the county court in the rejection of the testimony offered by the appellant in his fifth bill of exceptions. No contract for a stipulated compensation for the services rendered having been proved, the appellee's right to recover was upon the ground of a *quantum meruit*. The estimate which the jury, by their verdict, should place on the services for which compensation was sought, was the price at which like services, by counsel of the same eminence, are ordinarily obtained. How then can the value of such services be ascertained so satisfactorily, as by proving what the same party or other persons paid for similar services. Suppose that a witness were produced, who proved that the ordinary compensa-

tion allowed to such counsel for such services was a specified sum by him stated. Upon what knowledge of facts must his statement, to be evidence at all, be necessarily founded? Why that A, B, C and D, &c., under like circumstances for like services paid, or were required to pay, that, or nearly that sum of money. If then it be admissible to show what others paid, under similar circumstances, is it not competent for the appellant to prove the sum paid by him for services identical, and in the same cause, to other counsel, who, for aught that appears in the record before us, may have been of equal professional ability and eminence with the appellee himself. Indeed the circumstances under which the proffered witness was enlisted in the cause, repel the idea of his great professional inferiority to the appellee, with whom he was associated solely for the purpose of trying the case in the court of last resort. It is not the usage of clients, on such occasions, to call in as associate counsel, a member of the bar of inferior standing to him who tried the cause in the court below. But, if contrary to this usage, the appellant's testator had done so, it was competent for the appellee to have shown it by evidence before the jury.

It has, however, been insisted, that the charges of lawyers are so wholly dissimilar in amount; the value of their services so disproportionate, that the mode suggested of ascertaining the value of their services, is wholly inapplicable. If this be true, the same may be predicated, in a greater or less degree, of all other professions, arts and trades. What other measure of value can you in reason and justice apply to services rendered by counsellors at law, It will not, I presume, be contended, that where no contract for specific compensation has been entered into, the client is bound to pay whatever charge his counsel may see fit to make for his services. When the common law of *England*, in relation to the fees of counsellors at law, was determined to be inapplicable to the State of *Maryland*, and that in a *quantum meruit* they might recover for professional services rendered; that decision necessarily drew with it the standard I have mentioned, for the ascertain-

ment of the value of such services. The materiality and relevancy of the testimony offered, was too obvious to require from the counsel an assurance to the court that it would so appear in the progress of the cause.

I concur with the county court in their refusal of the defendant's prayer for an instruction to the jury, which forms the basis of his sixth bill of exceptions. Although the jury might find that by the terms of the contract the appellee was bound to prosecute, to a successful issue, the controversy then pending in the orphans court of *Montgomery* county, and that the contingent fee of two thousand dollars had been paid to him ; yet the county court were not authorised to instruct the jury, that the appellee was not entitled to claim any further compensation for his services proved to have been rendered as aforesaid in the Court of Appeals; because in doing so, the instruction would have excluded, from the consideration of the jury, all the testimony offered by the appellee, to show that the appellant's intestate had promised to make the appellee an additional compensation for his services, besides the contingent fee of two thousand dollars, of which there was testimony offered, legally sufficient to have been left to the jury ; and from which the jury might have found the existence of such agreement for additional compensation, if they regarded the testimony sufficient, in point of fact, for that purpose. Such an exclusion of evidence would have been an unwarrantable invasion of the province of the jury, which the court below very properly refused to perpetrate.

To the granting of the plaintiff's prayer, for an instruction to the jury, as it stood in the defendant's seventh bill of exceptions, unmodified by either of the parties, I can see no reasonable ground for objection. And the defendant cannot assign for error, the results of any of his own modifications or additions to the prayer of the plaintiff. If there be error then, for which the judgment should be reversed, it must be found in the additions made by the plaintiff to the instruction as modified and amended at the defendant's instance. And in the adoption of each of those additions I think there is such

error as calls for the reversal of the judgment before us.   The first of these additions, (if not so in express terms, would in all probability, have been so understood by the jury,) called on the court to say that for all services performed by the plaintiff, at the instance of the appellant's intestate, in consequence of the act of 1832, granting an appeal from the trial of the issues in *Montgomery* county court to the Court of Appeals, he was entitled to recover of the appellant a reasonable compensation in addition to the contingent fee of two thousand dollars   This addition to the defendant's modification might with propriety have been hypothetically granted by the court to the jury; that is the jury might have been instructed that such was the law, provided they found, as contended for by the appellee, that by the contract between the parties, the contingent fee of two thousand dollars was to have been paid him for his successful trial of the issues then pending in *Montgomery* county court. But suppose the jury had been of opinion, as I have said they had the power to be, that the appellant's version of the contract was the true one; and that the two thousand dollars was only to have been paid upon the successful termination of the controversy about the will, and the appellant's intestate being put into possession of *Cramphin's* estate; could the court then have instructed the jury as required by this first addition to the defendant's modification of the plaintiff's prayer? unquestionbly not.

In the grant of the instruction asked for in the plaintiff's second or further addition to the instruction to be given to the jury, the court undertook to decide a matter of fact, which the jury only were competent to determine.   The county court, as called on to do by the plaintiff, determined that the motion for a new trial was decided or disposed of by the court, before an appeal was taken to the Court of Appeals.   Of this fact, no record evidence was offered; but the proof was wholly oral; of the credit due to which the jury only were competent to judge.   In withdrawing from the jury the right to judge of the credibility of the witnesses and the truth of their statements, I think the county court erred.

I concur with the county court on the appellant's first, fourth and sixth bills of exceptions, but dissenting on the second, third, fifth and seventh, I think, its judgment should be reversed and a procedendo awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.