(Decided 29th January, 1874.)

---

HENRY BROOKE *vs.* ROBERT S. WIDDICOMBE.

*Office of a Demurrer—Article 4, sections 11 and·12, of the Constitution of 1867—Election returns—Authority of the Governor to issue Commissions—Contested Election—Official tenure—Jurisdiction of the Court of Appeals in the matter of a claim to be entitled to the Office of Clerk of a Circuit Court—Jurisdiction of the House of Delegates in the matter of a Contested Election—Discretion as to allowing a Writ of Mandamus.*

W. claimed to be entitled to the office of Clerk of the Circuit Court for Prince George's County, and being denied possession thereof by B. filed his petition for a writ of mandamus. The petition alleged, that at an election held on the 4th of November, 1873, for Clerk of the Circuit Court for Prince George's County, the petitioner received a plurality of the votes cast by the qualified voters of the county, and was returned as having been duly elected to the office; that the Governor thereupon issued a commission to the petitioner, who gave bond as required by law, which was duly approved and recorded, and

having paid the legal tax on his commission, and taken the oath of office before B., the then incumbent, demanded of him the possession of the office, which was refused. B. in his answer averred that the petitioner was not legally elected to the office, but that the respondent actually received a plurality of the votes cast by the qualified voters of the county, and alleged that a number, to wit, not less than thirty fraudulent and illegal votes were cast for the petitioner, and that he "was not legally elected owing to the aforesaid fraudulent votes cast for him." The petitioner demurred to the answer. HELD :

- That the legal effect of the demurrer was not to admit the facts thus stated in the answer.

- If facts are pleaded which are insufficient in substance or immaterial, they are not admitted by a demurrer to be true; its office is to assert a legal proposition, that the pleading demurred to is insufficient in law to maintain the case shown by the adverse party.

- Section 11 of Article 4 of the Constitution of 1867, provides that "all elections for Clerks ❊ ❊ ❊ ❊ shall be certified, and the returns made, by the Clerks of the Circuit Courts, and the Clerk of the Superior Court of Baltimore City, respectively, to the Governor, who shall issue commissions to the different persons for the offices to which they shall have been, respectively, elected; and in all such elections, the person having the greatest number of votes, shall be declared elected." Section 12 of the same Article declares that "in case of any contested election, the Governor shall send the returns to the House of Delegates, which shall judge of the election and qualification of the candidates at such election." W. and B. were candidates for the office of Clerk of the Circuit Court for Prince George's County, on the 4th of November, 1873. The election returns were duly made and transmitted to the Governor, from which it appeared that W. had received a plurality of the votes cast by the qualified voters of the county, and was returned as having been duly elected to the office. At the time of transmitting the election returns to the Governor, B. accompanied them with a notice of his intention to contest the election of W., assigning the grounds of contest, and requested the Governor to send the returns to the House of Delegates. Subsequently the Governor issued a commission to W. HELD :

- That the Governor had authority under sections 11 and 12 of Article 4 of the Constitution, upon the return of the judges of election certified to him by the Clerk of the Circuit Court, showing that W. had been elected, to issue to him the commission; and that W. having given bond and taken the oath, as required by law, was entitled to the office pending the contest before the House of Delegates.

By the commission issued to W. and his qualification, the official tenure of his predecessor B. was terminated. Upon a question as to who is entitled to the office of Clerk of a Circuit Court, raised by a petition for a writ of mandamus to obtain possession of the office, by one who has been duly returned as elected, and who has been commissioned, and has qualified, the jurisdiction of the Court of Appeals is confined simply to the determination of the legal right of the petitioner to claim the office. To the House of Delegates, the Constitution has given the exclusive power and jurisdiction to go behind the election returns,—to examine into the qualification of voters, purge the ballot-box and recount the votes.

The discretion confided to the Courts as to the propriety of allowing a writ of mandamus, is not arbitrary; it must be exercised under the established rules of law, and if, under these rules, the party is entitled to the writ, it must be issued.

APPEAL from the Circuit Court for Prince George's County.

This is an appeal from an order of the Circuit Court for Prince George's County, passed on the 20th of December, 1873, on the petition of the appellee, directing the writ of mandamus to issue, commanding the appellant to vacate the office of Clerk of the Circuit Court for Prince George's County, &c. The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*Daniel Clarke* and *I. Nevett Steele,* for the appellant.

The writ of mandamus is in the nature of a prerogative writ, and cannot be demanded *ex debito justitiæ;* but the power to issue it, rests within the sound discretion of the Courts, to be exercised under the rules long recognized and established at common law. *Weber vs. Zimmerman,* 23 *Md.,* 53; *Hardcastle vs. Md. & Del. R. R. Co.,* 32 *Md.,* 35.

The granting of the writ rests, to a certain extent, upon the same principles which would govern a Court of Equity in granting an injunction. *State vs. Jarrett & Harwood,* 17 Md., 330.

The granting of an injunction rests in the conscience of the Court, and there is no case authorizing an injunction against one having the legal right, and but few where the right is *doubtful,* except in cases to stay waste or prevent the destruction of the thing. *State vs. Jarrett & Harwood,* 17 *Md.,* 330.

So, to entitle the party applying for a writ of mandamus, against one in office by a legal title, the petitioner must show he is clothed with a clear, legal and equitable title to the office which is the subject of the writ. 3 *Bl. Com.,* 263 *to* 265 ; 4 *Black. Comm.* 311 ; *Rex vs. Barker,* 3 *Burr.,* 1269 ; *Rex vs. The Mayor, &c., of Oxford,* 33 *Eng. Com. Law,* 89.

To entitle the petitioner to the writ of mandamus he must either exhibit with his petition such evidence of his right as would satisfy the Court *prima facie* of the truth thereof, or the facts must be admitted by the respondent, which would entitle him to the office, or he must furnish proof thereof. *Union Bank vs. Poultney and Ellicott,* 8 *Gill & Johns.,* 324 ; *Conolly & McCarthy vs. Riley & Riley,* 25 *Md.,* 417 ; *Hankey vs. Abrahams,* 28 *Md.,* 588 ; *Eichelberger vs. Sifford & Lorentz,* 27 *Md.,* 320.

The petitioner does not state such a case in his petition and furnish such *prima facie* evidence of his right to the office of Clerk of the Circuit Court for Prince George's County, as to entitle him to the writ of mandamus.

To entitle him to the office of Clerk of the Circuit Court, he must state in his petition, and accompany the petition with the *prima facie* proof to satisfy the Court,

First.—That he was elected by a plurality of the qualified voters of said county. *Art.* 4, *sec.* 25 *of the Constitution of* 1867.

And that his election was *certified*, and the returns made by the Clerk of the Circuit Court ·for Prince George's County to the Governor. *Art.* 4, *sec.* 11 *of the Constitution of* 1867.

Although he alleges in the petition that he was legally elected, having received a plurality of the votes cast by the qualified voters of said county, he furnished no *prima facie* evidence of it.

The *prima facie* evidence of his election to which he refers, is the returns made·by the presiding judge of election of Prince George's County, which returns are, he states, now on file in the Clerk's office of Prince George's County.

If the Act of 1865, chap. 143, is not repealed by.section 11 of Art. 4 of the Constitution, and is still in force, then the returns which are made the proper evidence of election, are *one* statement and *certificate* to be delivered to the Clerk of the Court, to which the presiding judges are directed to make their returns, which returns, by section 11 of Art. 4, the Clerk must make to the Governor, and the other certificate, which the judges are required to transmit by mail, to the Governor.

There is no provision of law for the returns of the presiding judge remaining on file in the Clerk's office, and therefore the reference made in the petition is not to such returns as properly establish his election.

The petition does not state a case which shows that the certificate and returns, upon which the Governor is authorized to issue the commission, were made to the Governor, as required, either by Art. 4, sec. 11 of the Constitution, or by the Act of 1865, ch. 143. Art. 4, sec. 11, requires that the election for Clerks *shall be certified*, and the returns (meaning the returns of the presiding judges,) made by the Clerk of the Circuit Court for the county, to the Governor, who shall issue commissions to the different persons for the offices to which they shall have been respectively elected.

Before the Governor, therefore, under this section could issue the commission, he must receive the *certificate* of election from the Clerk, and also *the returns* of the presiding judges made to the Clerk, and by him to the Governor.

The petition does not state that the certificate and returns were made as required by this Article of the Constitution, nor does the petitioner accompany his petition with any *prima facie* proof of it.

The Act of 1865, ch. 143, is still in force. *Art. 3, sec. 49 of the Constitution.* And if the Act be in force, the petition does not show that the Governor issued the commission upon the returns furnished in conformity with this Act.

The mere allegation that the petitioner "was in receipt of his commission as Clerk of the said Circuit Court for Prince George's County, the said commission having been regularly issued by the Governor of the State of Maryland," is not sufficient without furnishing the *prima facie* evidence of the same, or filing with the petition the *commission,* or a copy of the same. *Union Bank vs. Poultney & Ellicott,* 8 *Gill & Johns.,* 324; *Conolly & McCarthy vs. Riley,* 25 *Md.,* 417; *Hankey vs. Abrahams,* 28 *Md.,* 588.

The petition does not show that the relator has qualified by filing such a bond as the law requires him to execute before he is entitled to the office. A copy of the bond should have been filed to make out a *prima facie* case, with the approval of the Judges endorsed thereon. *Harwood vs. Marshall,* 9 *Md.,* 84.

The petition does not show that the relator has taken and subscribed the oath as required by the law, nor does the relator produce with his petition the *prima facie* evidence required by law. *Art. 1, sec. 6, and Art. 15, sec. 10 of the Constitution of 1867; Art. 68, secs. 7 and 8; Art. 18, secs. 49 and 50, and Art. 68, sec. 11, of the Code.*

The certificate of the Clerk or Secretary of State, that he administered the oath, is necessary as *prima facie* evi-

dence, to show that the relator has qualified by taking the oath. *Harwood vs. Marshall,* 9 *Md.,* 83

None of these defects of the petition, and want of production of *prima facie* evidence, showing a right to the office, are cured by admissions in the answer.

The answer denies—that the petitioner was legally elected. That his election was certified by the clerk to the Governor, but shows that he only transmitted to the Governor *a copy* of the returns of the election which had been held on the 4th of November, 1872, and which had been delivered to him.

It further denies—That the return judges transmitted a statement and certificate of the returns by mail to the Governor, that the Governor had any authority to issue any commission, and does not admit that the relator was in receipt of a commission regularly issued by the Governor.

While admitting that the relator presented *a bond*, it does not admit that the bond was in proper form, or was such a bond as the law requires.

The answer alleging the respondent to have been elected clerk on the 5th of November, 1867, and that he was duly returned, commissioned and qualified, to hold the office for six years or until his successor is elected and qualified, and that he has „since that time been and is now in possession of the office, entitles him by virtue of his tenure of office to hold the office until it is decided or ascertained who is elected and qualified as his successor. *Art.* 4, *secs.* 1, 3, 7, 25, 37, 41 *and* 44 *of the Constitution of* 1867; *Harwood vs. Marshall,* 10 *Md.,* 451; *Marshall vs. Harwood,* 5 *Md.,* 423; *State vs. Jarrett,* 17 *Md.,* 309.

The demurrer for the purposes of this case, and upon this application for a mandamus, admits that the relator was not legally elected as stated in the answer.

Where the right to an office on application for a writ . of mandamus is claimed upon the allegation of the *elec-*

*tion* of the relator, and the answer denies that the relator is legally elected, and the fact that he is not legally elected is admitted by the pleadings, the writ of mandamus *cannot* properly issue. *Rex vs. Mayor of London*, 9 *B. & C.*, 26; *Rex vs. Mayor of London*, 5 *B. & Ad.*, 233; *Rex vs. Mayor of London*, 2 *N. & M.*, 126, 130; *Wright vs. Fawcett*, 4 *Burr.*, 2041; *Rex vs. Mayor, &c., of York*, 5 *T. R.*, 71; *Reg. vs. Mayor, &c., of Norwich*, 2 *Salk.*, 436; *Rex vs. Mayor of Cambridge*, 2 *T. R.*, 456.

The Governor had no right to issue a commission to the relator. The Governor in issuing a commission performs a ministerial act or function, and his right to issue a commission may be inquired into, and determined by the judicial department of the Government. *Watkins vs. Watkins*, 2 *Md.*, 341; *Magruder vs. Swann*, 25 *Md.*, 173.

Under the 12th section, so soon as the Governor is notified that, upon the returns, a case of contested election exists, his authority ceases over the subject-matter. He must send the returns to the House of Delegates. The House of Delegates becomes the exclusive judge of the *election* and qualification. *State vs. Jarrett & Harwood*, 17 *Md.*, 309.

This makes the exceptional case, and takes the case out of the *ordinary* rule, spoken of in *Swann vs. Magruder*, that he acts on the *prima facie* result. The last clause in section 12, where the Constitution says, "or the one who has been commissioned by the Governor," is intended to embrace the case where the commission has issued before the Governor is notified of the contest.

Such a case may readily arise, as the contestant has thirty days in which to originate the contest, and may not know when the returns are made, that he has just grounds upon which to contest the election. The Governor does not receive the returns as "contested," and may therefore issue the commission regularly.

The jurisdiction of the House of Delegates, (in the case of the contested election of the Clerk,) to judge of the *election,* and *qualification* of the contestants, being *entire, absolute* and *exclusive,* when it once attaches, it ousts the jurisdiction of the Circuit Court over the subject-matter. The cases of contested elections in which the Circuit Courts have jurisdiction, are provided for in Art. 35, secs. 53 and 54 of the Code. Contested elections of the Judges, Clerks and Registers, are under the sole and exclusive jurisdiction of the House of Delegates. *State vs. Jarrett & Harwood,* 17 *Md.,* 309.

The jurisdiction of the House of Delegates in this case, attached prior to the assembling of the General Assembly, immediately upon the Governor being notified on the 11th of November, 1873, that the appellant contested the election, and asked that the returns be sent to the House of Delegates. It certainly attached before the General Assembly met on the 7th of January, for the Act of 1865, ch. 143, provides that the testimony shall be taken in such cases,—viz: Clerks, &c., in the same manner as is prescribed in contested seats of the Senate and House of Delegates. *Act of 1865, ch. 143; Art. 35, secs. 55–66 of the Code.*

The "contested case" in which the House of Delegates is to "judge of the election and qualification of the candidates," was *in fieri* when the petition for the writ and order thereon were filed. *Newcomer vs. Keedy,* 9 *Gill,* 263.

The jurisdiction having been assumed by the House of Delegates, this Court has no jurisdiction over the subject-matter. *Brown vs. Wallace,* 4 *G. & J.,* 479; *Brooks vs. Delaplaine,* 1 *Md. Ch. Dec.,* 351; *Snyder vs. Snyder,* 1 *Md. Ch. Dec.* 295; *Winn & Ross vs. Albert,* 2 *Md. Ch. Dec* 53; *Albert vs. Winn,* 7 *Gill,* 446; *Withers vs. Denmead,* 22 *Md.,* 147.

The House of Delegates having full power to grant complete and specific relief, the writ of mandamus can-

not be properly granted. *Hardcastle vs. Maryland &
Delaware R. R. Co.*, 32 *Md.*, 35 *and* 36 ; *King vs. Bishop
of Chester*, 1 *Durnf. & East*, 396 ; *The People vs. Mayor*,
*&c., of New York*, 10 *Wend.*, 393 ; 4 *Bacon Abr.*, 496.

The writ not being one *ex debito justitiæ*, but resting
in the sound discretion of the Court, it should not be
granted in favor of one whose right to the office is con-
tested, and against the one who holds the office by virtue
of his tenure or right to the office until his successor is
elected and qualified. Public policy would seem opposed
to putting one in office under the writ, whom the House
of Delegates may shortly decide not to be elected, and
oust from office. *State, &c. vs. Graves*, 19 *Md.*, 374.

*William A. Meloy* and *Frederick Stone*, for the appellee.

Art. 4, sec. 25, of the Constitution provides for the
election of Clerks of the Circuit Courts, by a plurality
vote ; and the judges of election appointed by the County
Commissioners for each election precinct, are required by
law, on the day fixed by the Constitution, to receive the
ballots of all the qualified voters, and after counting the
same, to make their return to the Clerk of the Circuit
Court for the time being. *Code, Art.* 35, *sec.* 39. And
upon the receipt of these returns, from the judges of
election, the Clerk of the Circuit Court is required to
certify the same to the Governor. *Constitution, Art.* 4,
*sec.* 11. And thereupon, the Governor shall issue his
commission in accordance with such return. *Art.* 4, *sec.*
11, *of Constitution.* And when this is all done, the per-
son holding this commission is *elected* in the manner pre-
scribed by the Constitution and Laws. There is an
Appellate Tribunal, provided by the Constitution, (*Con.,
Art.* 4, *sec.* 12,) the House of Delegates, and that tri-
bunal alone, can reverse the action of the judges of elec-
tion, the certificate of the Clerk and the commission of
the Governor. But, until the House of Delegates de-

clares the election of the appellee void, his election must be recognized by the Courts and the community.

The only qualification required of the Clerk elect, by the Constitution, (Art. 1st, sec. 6,) is the oath therein prescribed, and the only additional qualifications prescribed by law, are the giving bond and paying the tax on his commission, all which has been done, and the appellee is therefore *elected and qualified.* As soon as the appellee was elected and qualified by the express terms of the Constitution, the term of his predecessor, Brooke, ended, and from that moment he had no more right to the office than any other citizen, and his holding was, and is, a wrongful usurpation.

It is contended by the appellant, that as he had given due and proper notice of his purpose to contest the election before the House of Delegates, the Governor was in error in issuing the commission, and he, Brooke, was entitled to hold on to the office until the House of Delegates decided the matter.

The House of Delegates are not limited to any time whatever in their decision of any contested election case, and it is entirely competent for this House of Delegates to leave the matter undecided, and to refer it to the next House of Delegates, and so on to the end of the term, for which the appellee was elected. Thus depriving the people of the county of the officer of their choice, and foisting upon them one they had repudiated at the polls. Again the House of Delegates have no power to declare Brooke elected. All they can do is to order a new election. Should a new election be ordered, it will, in all probability, take place *after* the adjournment of this Legislature, and should Widdicombe again be declared elected by the judges of election, all that Brooke need do to secure two more years' tenure of office is again to give notice of contest, and according to his theory, the whole matter must remain in abeyance until the winter of 1876;

he, however, in the mean time, entitled to the profits and emoluments of the office; such would be some of the consequences of his construction of sec. 12 of Act. 4 of the Constitution.

This Court has decided that the Governor is bound to issue a commission in accordance with the certificate of the Clerk, and if he refuses to do so, a Court of Law will compel him; and that upon the receipt of the commission and qualification under it, the person holding the commission is entitled to the possession of the office. *Magruder vs. Swann,* 25 *Md.,* 173; *Magruder vs. Tuck,* 25 *Md.,* 217.

This Court has also decided, that upon the return of the judges of election and the certificate of the Clerk, and the issuing of the commission by the Governor, and the subsequent qualification of the appellee, the term of the appellant absolutely ended, and the appellee became entitled to the office, notwithstanding the intention of the appellant to contest the election before the House of Delegates, until the House of Delegates should order a special election, and one should be held, a Clerk elected and qualified at such election. *Jump vs. Spence,* 28 *Md.,* 1.

It was competent for the petitioner to demur by way of plea, under sec. 5, Art. 59, of the Code, and the qualified form of the demurrer did not vitiate or change the substantial character of the plea. For the purposes of the argument, it admitted all the averments of the answer which were well pleaded, notwithstanding the qualification of form, and this is all that the law of pleading requires. It looks to the merits and the substance of things, and the substance of a demurrer is, that allowing all to be true that has been pleaded or answered, which is relevant to the case and well pleaded, yet the averments are not in law sufficient to defeat the party's claim.

The illegality of the election of the petitioner was not well pleaded, and therefore was not admitted by the demurrer, unless it presented a question of fact into which the Court had right and jurisdiction to enter.

While the Court, upon proper averments, might enquire whether the election itself was warranted by law, as in the case of *Sansbury vs. Middleton*, 11 *Md.*, 296, or whether the petitioner had duly qualified, as in the case of *Magruder vs. Tuck*, 25 *Md.*, 216, or in fine, whether any step subsequent to the election itself was wanting to make up the complement of the petitioner's right, yet into the election itself, into the question whether one party or the other had the greatest number of votes cast by legally qualified voters, the Court could not go.

The House of Delegates considers whether the election was regular and untainted by fraud. That is the only inquiry it has power to make. It is not proper for it to enquire into anything else. The field wherein the two tribunals are called upon to act, are entirely distinct, and there can therefore be no conflict of jurisdiction.

BARTOL, C. J., delivered the opinion of the Court.

It appears from the record that the appellant, in November, 1867, was duly elected and qualified as Clerk of the Circuit Court for Prince George's County, and has ever since held the office under *Art. 4, sec. 25*, of the Constitution, which entitles him to hold the same "for *six years from the time of his election*, and until *his successor is elected and qualified.*" At the late general election held on the fourth day of November last, he was a candidate for re-election to the same office, and the appellee was also a candidate; the election returns were duly made and transmitted to the Governor, from which it appeared that the appellee received a plurality of the votes cast by the qualified voters of the county, and was returned as having been duly elected to the office.

Whereupon the Governor issued a commission to the appellee and on the 20th day of the same month, he gave bond as required by law, which was duly approved and recorded, and having paid the legal tax on his commission, and taken the oath of office before the appellant demanded of him the possession of the office, and being refused, applied for a writ of *mandamus* to compel the appellant to surrender to him the possession of the office. His petition was filed, and a rule to show cause thereon, being served on the appellant, he filed an answer thereto, setting forth the defences on which he intended to rely in resisting the application ; to this answer the appellee demurred, and the case was submitted to the Court below, and comes before us upon the petition, answer and demurrer. It appears that at the time of transmitting the election returns to the Governor, the appellant accompanied them with a notice of his intention to contest the election of the appellee, assigning the grounds and reasons of contest, and requested the Governor to send the returns to the House of Delegates, by which alone such contest must be finally decided, under Art. 4, sec. 12, of the Constitution. The main question raised by the answer and presented by this appeal, is whether the Governor had the power to issue the Commission to the appellee before such contest has been decided by the House of Delegates? or in other words, the question is, who is entitled to the office pending the contest?

Before considering that question, however, it is proper to dispose of some preliminary questions, which have been argued at the bar arising upon the pleadings.

It has been contended that the petition is insufficient; that it fails to show on its face that the appellee is entitled to the office ; because it is not accompanied with vouchers or proofs in support of its allegations.

The Code, *Art.* 59, which regulates proceedings of this kind, directs that *" the petition shall be verified by affidavit,*

*and set forth fully the grounds of the application."* The petition in this case fully complies with this requirement; it is true that no *prima facie* proof is filed therewith, the commission is not exhibited, nor a copy of the official bond or any certificate that the same had been duly approved, or that the oath of office had been taken by the appellee; but no objection was taken below on account of the absence of such exhibits. The effect of the answer was to waive such objections. The petition distinctly alleges, that the appellee was duly commissioned by the Governor, that his official bond was approved by the Judges of the Circuit Court, that it was handed to the appellant, the then Clerk, and by him received and recorded; and that the oath of office was thereupon administered to the petitioner according to law by the appellant. These averments are not denied by the answer; but are distinctly therein admitted. It was unnecessary therefore to adduce proof in their support.

The answer avers that the petitioner was not legally elected to the office; but that the respondent actually received a plurality of the votes cast by the qualified voters of the County, and alleges that a number, to wit: not less than thirty fraudulent and illegal votes were cast for the petitioner; and that "the said Widdicombe was not legally elected, owing to the aforesaid fraudulent votes cast for him."

In the argument of the case, it was earnestly insisted on the part of the appellant, that the effect of the demurrer was to admit the facts thus stated in the answer; and consequently that the appellee is in the attitude of claiming an office, to which he admits by his pleading he was not legally elected. Such is not the legal effect of the demurrer. It is well settled that a demurrer regularly admits no other facts than those which are well pleaded; if facts are pleaded which are insufficient in substance or immaterial, they are not admitted by the

demurrer to be true ; its office is to assert a legal proposition, that the pleading demurred to is insufficient in law, to maintain the case shown by the adverse party." *Gould on Plead., ch.* 9, *secs.* 2, 3, 4 *and* 5.

The averment in the answer is substantially that there were fraudulent votes cast for the appellee, and for that reason he was not legally elected ; but that is a question which the Court has no jurisdiction or authority to decide ; the averment therefore raises what in this case is an immaterial issue, and "when a plea makes an immaterial issue it is demurrable," as decided in *Law vs. Scott,* 5 *H. & J.*, 438 ; *Neale vs Clautice,* 7 *H. & J.*, 372.

Upon the return of the judges of election certified to the Governor by the Clerk of the Circuit Court, showing that the appellee had been elected, it is very clear that the Governor had the authority to issue to him the commission under the 11th and 12th sections, Art. 4 of the Constitution.

In *Magruder vs. Swann,* 25 *Md.,* 173, which arose under the Constitution of 1864, containing the same provisions, it was held that the duty imposed upon the Governor in such cases is merely ministerial, and its performance might be enforced by *mandamus.*

It has been argued that it was the duty of the Governor to withhold the commission, upon receiving notice from the appellant, of his intention to contest the election before the House of Delegates. But there is nothing in the sections of the Constitution to which we have referred that supports this view. On the contrary, the 11th section expressly declares that the election returns shall be certified to the Governor, "*who shall issue commissions to the different persons for the offices, to which they shall have been, respectively, elected ; and in all such elections, the person having the greatest number of votes, shall be dec'ared to be elected.*"

The 12th section directs " that in case of any contested election, the Governor shall send the returns to the House of Delegates, which shall judge of the election and qualification of the candidates at such election." But this cannot be construed as depriving the Governor of the power to issue the commission to the person returned as elected ; and to whom by the previous section it is made the duty of the Governor to issue the commission. The last part of the 12th section evidently contemplates that the commission in such case may be issued, for it provides that "if the judgment of the House of Delegates shall be against the one who has been returned elected, or the one commissioned by the Governor, the House of Delegates shall order a new election within thirty days." It is very obvious from the language of the Constitution, as well as upon the plainest reason, that it never was contemplated, that a party should be entitled to continue in office, merely by giving notice to the Governor, of his intention to contest the election of his successful competitor ; or that the Governor, upon receiving such notice, would be justified in refusing to issue the commission to the person regularly and duly returned as elected.

The commission having been properly issued to the appellee, and he having given bond and taken the oath as required by law, there appears to us to be no valid ground for denying to him the right to the office. By his commission and qualification the official tenure of his predecessor was terminated. This was substantially decided in *Jump vs. Spence,* 28 *Md.,* 1. In that case Judge FRANKLIN was duly returned as elected to the office of Circuit Judge, was commissioned and qualified, and went into the office; his election was contested by Judge SPENCE, his predecessor in office, and the House of Delegates, upon grounds not necessary now to be noticed, decided in favor of Judge SPENCE, to whom the office was

then surrendered.  The case arose upon a claim made by Judge SPENCE against the Comptroller, for the salary, during the time when the office was held by Judge FRANKLIN.  This Court decided against the claim, reversing, to that extent, the ruling of the late Judge MASON, who decided the case below as special Judge.  But on the question of the right of Judge FRANKLIN to the office, during the contest, this Court affirmed the ruling of the Special Judge, who said in his opinion : "As soon therefore as Mr. FRANKLIN received his commission and qualified thereunder, in legal contemplation he became for the time being, the legally constituted Judge, at least so far as the public were concerned, and his predecessor who held over under the Constitution up to that time was superseded. The commission and qualification were all the muniments of title to the office which the Constitution in that stage of the case required.  The official tenure of Mr. SPENCE, under his first commission, was as effectually terminated by the Commission and qualification of Mr. FRANKLIN, as if that gentleman had been subsequently confirmed by the House of Delegates."  On this question this Court said, 28 *Md.*, 11, "We agree with the conclusion to which the special Judge arrived in deciding the case. We think the appellee (SPENCE) could not have continued to hold the office, after the commission and qualification of Mr. FRANKLIN."

That decision seems to us to conclude the question as to the right of the appellee to the office now in dispute. His title is not impaired or affected by the pending contest before the House of Delegates.  The effect of the opposite construction, contended for by the appellant, would be to enable him, by making a contest, to extend his official term indefinitely ; for if a new election should be ordered and he be again unsuccessful, he would only have to notify the Governor of his intention to make a contest, in order to remain in office until the next meeting of the House of Delegates two years hence.  Such a con-

struction of the Constitution cannot for a moment be accepted. But it is urged that a *mandamus* ought not to be awarded in favor of the appellee, because of the pending contest before the House of Delegates, upon the ground that where the same question is pending before another tribunal having concurrent jurisdiction, the writ ought not to be granted. In support of this view we have been referred to *Hardcastle's case*, 32 *Md.*, 32, and other decisions have been cited to the same effect, but they have no application to this case, for the reason that the jurisdiction of the House of Delegates and that exercised by this Court, are in no sense concurrent. To that tribunal the Constitution has given the exclusive power and jurisdiction to go behind the election returns, to examine into the qualification of voters, purge the ballot box and recount the votes ; subjects over which the Courts have no jurisdiction. Our power and jurisdiction are confined simply to the question of the legal right of the appellee to claim the office, after having been duly returned as elected, and being commissioned and qualified ; and on this question we do not think there is any room for doubt. The last argument addressed to us on behalf of the appellant, is that the writ of *mandamus* not being one *ex debito justitiæ*, but resting in the sound discretion of the Court, ought not to be granted in the present case, because of the contest pending in the House of Delegates. To this a brief answer will suffice, as said by the Court below, the discretion confided to us is not arbitrary, "but must be exercised under the established rules of law, and if under those rules the party is entitled to the writ, it must be issued."

For these reasons the order of the Circuit Court will be affirmed, and the case will be remanded, to the end that a writ of *mandamus* may be issued as prayed.

*Order affirmed.*

(Decided 5th February, 1874.)

STEWART, J., delivered the following dissenting opinion :

The high prerogative writ of *mandamus* has been justly compared to a bill in equity for specific performance, which must present the most solid and substantial merits to induce a Court of Chancery to grant such relief.

When applicable to a case in which the right to occupy a public office is involved, it will not issue upon light, technical and equivocal representations, but having its foundation in the principles of justice and public policy, to preserve peace, order and good government ; there must exist the strongest grounds of equity, and the exigencies of the occasion must admit of no reasonable doubt, to demand from the conscience of the Court, the exercise of this extraordinary remedy.   I have been able to find not a solitary case where it has been employed by the Court to instal a party in a public or private office, conceded to have but an apparent and colorable title thereto ; where a competent tribunal, having full power and authority finally to conclude the matter, was in the actual exercise of its jurisdiction in the investigation and trial thereof.

Under such circumstances, that another Court, not having ample authority to hear and determine upon the merits of the case, and render full and adequate justice, should intervene, and by its process put the applicant in the office, who may, upon the ultimate determination, be deprived thereof, and constituted an intruder, strikes me, as a proceeding anomalous and unwarranted by the nature of the writ.

I do not understand, that the Courts are to be made the mere instruments to settle and determine upon colorable or *prima facie* titles, but upon *bona fide,* and complete claims.

The writ, in my judgment, should never issue, in any case upon such grounds as presented by the pleadings and evidence in the case before us.   It is not demandable

*ex debito justitiæ,* but is always granted, according to the sound discretion of the Court, governed by the rules established for the maintenance of substantial justice. It was said by C. J. BOWIE, in the case of *State vs. Graves,* 19 *Md.,* 374, that this discretion will not be exercised, unless some just and useful purpose may be answered by the writ. The same doctrine is held in all the cases. *Wallace vs. Zimmerman,* 23 *Md.,* 53; *Hardcastle vs. Railroad,* 32 *Md.,* 35.

According to the provisions of the 12th sec. of Art. 4, of the Constitution, the House of Delegates is made the judge of the election and qualification of the applicant here to the office of Clerk of the Court for Prince George's County; and the contest as to the rightful occupant of that office, is now pending before that body, whose exclusive province it is to determine the question. It is a well settled principle of law, that where a matter is in controversy before a competent jurisdiction, the Court should not interfere by *mandamus. Tappan on Mand.,* 74.

Conceding that the petitioner has been returned as elected to the office in question, and has been commissioned by the Governor, and has given bond and qualified, according to law, and that this gives him at least a *prima facie* title, to occupy the office of Clerk; but that such is the fact, that the legality of the election and his right to the office, is being contested before the House of Delegates, what sufficient reasons of public policy, or the civil or personal rights of the applicant, have been shown to justify the exercise of this high prerogative writ. In what respect are the interests of the public, or the individual jeopardized by its refusal? It is not the duty of the Court to interpose and determine questions in advance of the action of the forum, authorized and fully empowered finally to adjudicate them.

The action of the Court would necessarily be limited, and ought to await the exercise of jurisdiction by the

appropriate tribunal.   Such exercise of authority by the Courts, does not seem to me to be demanded, upon the principles of public policy, or the interests of the petitioner, whose case may be speedily disposed of by the House of Delegates; and his ultimate rights in this matter determined.   Comity and ordinary respect to the proper tribunal, to adjudicate the question, forbid interference except in a case demanding the most summary and active measures to prevent a gross wrong.

But the facts disclosed by the proceedings in this case, according to my judgment, deny to the petitioner the benefit of the legal presumptions in his favor, afforded by the commission of the Governor.

We are obliged to consider the case according to the facts, disclosed by the pleadings, under the effect of the general demurrer to the answer of the respondent.

The question must be disposed of as it has thus been presented.

The demurrer by the established rule of pleading, admits the facts alleged in the answer, and refers the question of their legal sufficiency to the decision of the Court. *Weems vs. Willard,* 2 *H. & G.,* 143; *Neal vs. Clautice,* 7 *H. & J.,* 372; 1 *Chitty's Plead.,* 662.

I take it, the matter stands under the demurrer, very much in the same position it would occupy if a replication had been entered to the answer, and there had been proof of the facts as stated in the answer.

The answer avers, that the respondent rightfully holds the office by virtue of his election as Clerk in 1867, until his successor has been elected and qualified.   It denies that the petitioner was legally elected, and this fact is admitted by the demurrer—

That there were fraudulent votes cast for the petitioner, and that the respondent received a plurality of the votes of the qualified voters.

Assuming that the averments are not mere formal statements, but representations of the actual facts, and according to my judgment from the pleadings, they must be so understood; all presumptive right to the office on the part of the petitioner, is overcome by the admitted facts; and to give him the benefit of the writ of *mandamus* to place him in the office, in this state of the case, seems to me at war with the established principles governing the exercise of that writ.

It appears to me such a conclusion would instal the petitioner in the office by virtue of the Governor's commission, although he admitted he had not really been elected; and was not legally entitled thereto; and that the commission was in truth, but an invalid instrument. If the House of Delegates should determine that the petitioner was legally elected and qualified to hold the office, and the respondent should refuse to surrender it, he would then be entitled to the writ; unless made to appear that the House of Delegates has ample authority to carry into effect, and enforce its own judgment in the matter.

With much respect for the opinions of my brethren, who constitute a majority of the Court, I am constrained to differ with them in their conclusion.

I think under the circumstances, the peremptory writ should not issue, and therefore that the judgment of the Circuit Court ought to be reversed and the petition dismissed without prejudice.